IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOGAN M. GRIMES,                          )
                                          )
     Plaintiff,                          )
                                          )
      -vs-                               )
                                          )
COUNTY OF COOK, an Illinois               )   No. 1:19-cv-06091
county, d/b/a COOK COUNTY                 )
HEALTH & HOSPITALS SYSTEM                 )   Plaintiff demands trial by jury
and/or CERMAK HEALTH SERVICES;            )   on all counts
and MELVIN JUDKINS, in his                )
individual capacity;                      )   Judge Gary S. Feinerman
                                          )
     Defendants.                         )   Magistrate Judge Jeffrey T. Gilbert

SECOND AMENDED COMPLAINT

(42 U.S.C. §1983 (violation of substantive Due
Process—disclosure of confidential information),
invasion of privacy (public disclosure of private
facts), intentional infliction of emotional distress,
and violations of the Illinois Human Rights Act)

COUNT I

(42 U.S.C. §1983—Substantive Due Process—
Disclosure of confidential information—against
Defendant MELVIN JUDKINS, in his individual
capacity, and the COUNTY OF COOK, an Illinois
county, d/b/a COOK COUNTY HEALTH & HOSPITALS
SYSTEM and/or CERMAK HEALTH SERVICES (the
county named solely for purposes of indemnification))

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his

attorney, JOANIE RAE WIMMER, and, complaining of the Defendants, MELVIN

JUDKINS, in his individual capacity, and the COUNTY OF COOK, an Illinois

- 1 -

county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or

CERMAK HEALTH SERVICES, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the

County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working

as a Correctional Medical Technician II in the Cook County jail.  Since

commencing that employment, the Plaintiff's employer has been Defendant

COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH &

HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

3.  Since the Plaintiff commenced working at the Cook County jail in

February of 2013 as a Correctional Medical Technician II, Defendant MELVIN

JUDKINS, has been the Plaintiff's immediate supervisor.  Defendant MELVIN

JUDKINS is, like the Plaintiff, an employee of Defendant COUNTY OF COOK,

d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK

HEALTH SERVICES.

4.  The Plaintiff is a transgender person.  As defined by Merriam-

Webster, transgender means "of, relating to, or being a person whose gender

identity differs from the sex the person had or was identified as having at

birth."  https://www.merriam-webster.com/dictionary/transgender

The Plaintiff's designated sex at birth was female.  In and around 2000, when

he was 37 years old, the Plaintiff was diagnosed with a medical condition then

known as gender identity disorder (DSM-IV), now known as gender dysphoria

(DSM-V).  In order to treat his gender dysphoria, the Plaintiff underwent a

series of medical interventions. Those medical interventions included hormone therapy (treatment with testosterone), as well as chest reconstructive surgery and genital surgeries, now known as gender confirmation surgeries. The Plaintiff's surgeries set forth above were completed by 2006. The Plaintiff is still having hormone therapy (testosterone).

5. As a result of the medical procedures outlined above, before 2008 the Plaintiff had male pattern baldness, a low (male) voice, a full beard, and a male build. Since before 2008, the Plaintiff has presented as unambiguously male. As of 2008 and thereafter, to disclose to a third party that the Plaintiff was transgender would be tantamount, in the Plaintiff's case, to disclosing that the Plaintiff had had a significant medical condition and significant medical interventions because (1) no one could look or sound like the Plaintiff whose designated sex at birth was female without significant medical interventions, (2) the combination of surgeries which the Plaintiff had were available only to persons diagnosed with gender identity disorder, now known as gender dysphoria, and (3) a person does not transition from one sex to the other unless they suffer from gender dysphoria, formerly known as gender identity disorder.

6. In and around 2003, the Plaintiff became recognized medically as male and became legally male under law.

7. Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff chose to

- 3 -

disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status. The fact that the Plaintiff is transgender is confidential medical information in his case.

8. Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff was living in stealth and did not disclose his transgender status publicly.

9. From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

10. In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

11. There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail

which is infused with transphobia and hatred of transgender people.

12. In August of 2018, while the Plaintiff was at work, a nurse and co-worker of the Plaintiff, whose last name is Bradford, told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed."

13. On or about September 28, 2018, Defendant MELVIN JUDKINS, while at work at the Cook County jail discussing an applicant for employment at the Cook County jail, and acting under color of law, told co-workers of the Plaintiff that the Plaintiff is transgender and told the Plaintiff's co-workers that the Plaintiff's transgender status was the reason the Plaintiff was no longer assigned to Division Six, the division housing transgender detainees. In making those disclosures, Defendant MELVIN JUDKINS was disclosing to the Plaintiff's co-workers confidential medical information relating to the Plaintiff. In making said disclosures, Defendant MELVIN JUDKINS was acting maliciously and with reckless disregard to the Plaintiff's safety and rights.

14. The Plaintiff has a fundamental liberty interest in keeping his transgender status and his confidential medical information private, including, but not limited to, the fact that he once suffered from gender dysphoria, and that he has undergone medical procedures which enable him to present unambiguously as a male. There was no significant governmental interest in the disclosure of the Plaintiff's transgender status and confidential medical information to the Plaintiff's co-workers, and the disclosure of said information

by Defendant MELVIN JUDKINS under color of law violated the Plaintiff's substantive Due Process rights under the Constitution of the United States.

15.  On or about September 30, 2018, two co-workers of the Plaintiff, Katie Healy and Kirsten Bain, who were present when Defendant MELVIN JUDKINS outed the Plaintiff as set forth above, told the Plaintiff that Defendant MELVIN JUDKINS had disclosed the Plaintiff's transgender status to the Plaintiff's co-workers.  Bain told the Plaintiff that she was informing him of Defendant MELVIN JUDKINS' conduct in outing the Plaintiff because she was afraid for the Plaintiff's physical safety going forward.

16.  The disclosure of the Plaintiff's confidential medical information and transgender status to his co-workers at the Cook County jail created a significant likelihood of physical violence being perpetrated against the Plaintiff.

17.  As a proximate result of the disclosure to the Plaintiff's co-workers of his confidential medical information and transgender status by Defendant MELVIN JUDKINS, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, thereby losing income he would otherwise have earned, as well as an opportunity to earn retirement benefits.  In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his confidential medical information and transgender status by Defendant MELVIN JUDKINS, the Plaintiff has lost friends and acquaintances.  In addition, as a

proximate result of the disclosure to the Plaintiff's co-workers of his confidential medical information and transgender status by Defendant MELVIN JUDKINS, the Plaintiff has experienced severe mental and emotional pain and suffering as well as sleepless nights and hypertension and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

18.  Defendant MELVIN JUDKINS was acting in the scope of his employment by Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, in telling the Plaintiff's co-workers that the Plaintiff is transgender and that was the reason why the Plaintiff was no longer assigned to Division Six, the division housing transgender detainees.  Accordingly, Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, has a duty under §9-102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9-102) to indemnify Defendant MELVIN JUDKINS for any judgment for compensatory damages entered against him in this case.

WHEREFORE, for the above and above and foregoing reasons, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)  Awarding the Plaintiff, LOGAN M. GRIMES, compensatory damages in an amount to be determined by the jury; said amount to be in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(b)  Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against

Defendant MELVIN JUDKINS, punitive damages in an amount to be determined by the jury;

(c)  Awarding the Plaintiff LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(d) Awarding the Plaintiff, LOGAN M. GRIMES, his litigation costs; and

(e) Granting the Plaintiff, LOGAN M. GRIMES, such other and further relief as the nature of the case may permit.

COUNT II

(Invasion of privacy under Illinois law—public
disclosure of private facts—against Defendant
MELVIN JUDKINS, in his individual capacity)

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant MELVIN JUDKINS, in his individual capacity, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail.  Since commencing that employment, the Plaintiff's employer has been the County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

3.  Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Defendant MELVIN JUDKINS has been his immediate supervisor.  Defendant MELVIN JUDKINS is,

like the Plaintiff, an employee of the County of Cook, an Illinois county, d/b/a
Cook County Health & Hospitals System and/or Cermak Health Services.

4. The Plaintiff is a transgender person, meaning that his designated sex
at birth was female, but that, commencing in and around 2003, he began his
transition to male. Said transition requires and involves medical interventions,
including, but not limited to, hormone therapy. The Plaintiff has presented as
a male person since 2003. In and around 2003, the Plaintiff became legally
male under law.

5. Commencing in and around 2008, the Plaintiff sought to keep his
transgender status private; since then and until the Plaintiff was outed at work
by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff chose to
disclose his transgender status to only close friends, not to neighbors, casual
acquaintances, or co-workers. From and after 2008, when applying for
employment, the Plaintiff did not disclose his transgender status, and the fact
that the Plaintiff is transgender was a private fact which the Plaintiff did not
disclose publicly.

6. Within the transgender community, the term "living in stealth" is
used to refer to people who are not out to the public about their transgender
status. From 2008 until the Plaintiff was outed at work by Defendant MELVIN
JUDKINS as set forth hereinafter, the Plaintiff was living in stealth.

7. From and after the commencement of his employment as a
Correctional Medical Technician II at the Cook County jail, the Plaintiff
witnessed verbal harassment and degradation of transgender detainees by

correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

8. In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

9. There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

10. In August of 2018, while the Plaintiff was at work, a nurse and co-worker of the Plaintiff, whose last name is Bradford, told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed."

11. On or about September 28, 2018, Defendant MELVIN JUDKINS, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is transgender, thereby giving publicity to said private fact to the Plaintiff's co-workers. In disclosing the Plaintiff's transgender status to the Plaintiff's co-workers, Defendant MELVIN JUDKINS was acting maliciously and with reckless disregard of the Plaintiff's safety and rights.

12. In outing the Plaintiff as transgender to the Plaintiff's co-workers as

set forth above, Defendant MELVIN JUDKINS was not motivated or actuated by a purpose to serve his employer, and was not acting within the scope of his employment.

13.  Whether to disclose one's transgender status is a very private decision, involving, depending on where a person works and lives, potential violence and discrimination.  It would be highly offensive to a reasonable person to make public a person's transgender status without his permission.

14.  The Plaintiff's transgender status was not a matter of legitimate concern to the Plaintiff's co-workers at the Cook County jail or to the public.

15.  As a proximate result of the disclosure to the Plaintiff's co-workers of the Plaintiff's transgender status by Defendant MELVIN JUDKINS, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, thereby losing income he would otherwise have earned, as well as an opportunity to earn retirement benefits.  In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his transgender status by Defendant MELVIN JUDKINS, the Plaintiff has lost friends and acquaintances and has experienced and is continuing to experience mental and emotional pain and suffering.  In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his transgender status by Defendant MELVIN JUDKINS, the Plaintiff has experienced sleepless nights as well as hypertension and has been placed on hypertensive medication to reduce his blood pressure,

and has incurred medical expenses.

WHEREFORE, for the above and above and foregoing reasons, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)  Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS compensatory damages in an amount to be determined by the jury; said amount to be in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(b)  Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS, punitive damages in an amount to be determined by the jury;

(c) Awarding the Plaintiff, LOGAN M. GRIMES, his litigation costs; and

(d) Granting the Plaintiff, LOGAN M. GRIMES, such other and further relief as the nature of the case may permit.

<u>COUNT III</u>

(Intentional infliction of emotional
distress under Illinois law—against Defendant
MELVIN JUDKINS, in his individual capacity)

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant MELVIN JUDKINS, in his individual capacity, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working

as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been the County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

3. Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Defendant MELVIN JUDKINS has been his immediate supervisor. Defendant MELVIN JUDKINS is, like the Plaintiff, an employee of the County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

4. The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

5. Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status.

6. Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender

status.  From 2008 until the Plaintiff was outed at work by Defendant MELVIN

JUDKINS as set forth hereinafter, the Plaintiff was living in stealth, and the

fact that the Plaintiff is transgender was a private fact which the Plaintiff did

not disclose publicly.

7.  From and after the commencement of his employment as a Medical

Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment

and degradation of transgender detainees by correctional officers and medical

staff on at least five occasions.  In addition, the Plaintiff is aware of incidents of

physical violence toward transgender detainees by correctional officers at the

Cook County jail.  See article from the Windy City Times from May 22, 2013,

attached hereto as Exhibit A.

8.  In 2013 the Cook County jail was placing some transgender detainees

in protective custody because of legitimate concerns of violence perpetrated

against them within the jail because they were transgender.  See article from

the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

9.  There is, and has been for the entire time the Plaintiff has worked at

the Cook County jail, a culture among the employees at the Cook County jail

which is infused with transphobia and hatred of transgender people.

10.  On or about September 28, 2018, Defendant MELVIN JUDKINS,

while at work at the Cook County jail discussing an applicant for employment

at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff

is transgender.

11.  On or about September 30, 2018, two co-workers of the Plaintiff,

Katie Healy and Kirsten Bain, who were present when Defendant MELVIN JUDKINS outed the Plaintiff as set forth above, told the Plaintiff that Defendant MELVIN JUDKINS had disclosed the Plaintiff's transgender status to the Plaintiff's co-workers. Bain told the Plaintiff that she was informing him of Defendant MELVIN JUDKINS' conduct in outing the Plaintiff because she was afraid for the Plaintiff's physical safety going forward.

12. In outing the Plaintiff as transgender to the Plaintiff's co-workers as set forth above, Defendant MELVIN JUDKINS was not motivated or actuated by a purpose to serve his employer, and was not acting within the scope of his employment.

13. Whether to disclose one's transgender status is a very private decision, involving, depending on where a person works and lives, potential violence and discrimination.

14. The conduct of Defendant MELVIN JUDKINS in disclosing the Plaintiff's transgender status to the Plaintiff's co-workers was extreme and outrageous, and put the Plaintiff's life at risk.

15. Defendant MELVIN JUDKINS intended that his conduct in disclosing the Plaintiff's transgender status to the Plaintiff's co-workers would inflict severe emotional distress on the Plaintiff or knew that there was a high probability that his (Defendant MELVIN JUDKINS') conduct would cause the Plaintiff severe emotional distress.

16. As a proximate result of the disclosure to the Plaintiff's co-workers of the Plaintiff's transgender status by Defendant MELVIN JUDKINS, the Plaintiff

reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, thereby losing income he would otherwise have earned, as well as an opportunity to earn retirement benefits. In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of the Plaintiff's transgender status by Defendant MELVIN JUDKINS, the Plaintiff has lost friends and acquaintances and has experienced and is continuing to experience severe mental and emotional pain and suffering, which has resulted in sleepless nights as well as hypertension requiring hypertensive medication to reduce the Plaintiff's blood pressure, and the Plaintiff has incurred medical expenses.

WHEREFORE, for the above and above and foregoing reasons, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a) Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS, in his individual capacity, compensatory damages in an amount to be determined by the jury; said amount to be in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(b) Awarding the Plaintiff, LOGAN M. GRIMES, his litigation costs; and

(c) Granting the Plaintiff, LOGAN M. GRIMES, such other and further relief as the nature of the case may permit.

<u>COUNT IV</u>

(Violation of the Illinois Human Rights Act—
Hostile and offensive work environment based on
gender-related identity—against Defendant COUNTY
OF COOK, d/b/a COOK COUNTY HEALTH &
HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES)

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his

attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF

COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS

SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the

County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working

as a Correctional Medical Technician II in the Cook County jail.  Since

commencing that employment, the Plaintiff's employer has been Defendant

COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH &

HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

3.  At all relevant times herein mentioned, the Plaintiff's performance as

a Correctional Medical Technician II met his employer's reasonable

expectations.

4.  Since the Plaintiff commenced working at the Cook County jail in

February of 2013 as a Correctional Medical Technician II, Melvin Judkins has

been his immediate supervisor.  Melvin Judkins is, like the Plaintiff, an

employee of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK

COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH

SERVICES.

5.  The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male.  Said transition requires and involves medical interventions, including, but not limited to, hormone therapy.  The Plaintiff has presented as a male person since 2003.  In and around 2003, the Plaintiff became legally male under law.

6.  Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers.  From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status.

7.  Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status.  From 2008 until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff was living in stealth, and the fact that the Plaintiff is transgender was a private fact which the Plaintiff did not disclose publicly.

8.  From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions.  In addition,

the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

9. In 2013 the Cook County jail was placing some transgender detainees into protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

10. There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

11. Commencing in 2018, the Plaintiff began experiencing pervasive and unwelcome harassment from co-workers at the Cook County jail, all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity. At first, there was nothing about the harassment which caused the Plaintiff to realize that it was based on his perceived or actual gender-related identity. Co-workers started shunning the Plaintiff and would not communicate with him. This happened on a daily basis and continued until the Plaintiff ceased reporting to work on or about October 1, 2018, after he was outed as transgender by Melvin Judkins as set forth hereinafter. Commencing in and around May of 2018, some of the harassment appeared to relate explicitly to the Plaintiff's perceived or actual gender-related identity. For example, in the late spring or early summer of 2018, Shirley McBride, a paramedic (Emergency Response Technician) and co-worker of the Plaintiff,

told the Plaintiff while laughing, "You really do have a big ass, don't you?" In the late spring or early summer, M. Brittman, a Correctional Medical Technician II, referred to the Plaintiff as "girl". And in August of 2018, a nurse whose last name is Bradford told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed." On or about September 28, 2018, Melvin Judkins, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is, in fact, transgender. In and around October of 2018, when the Plaintiff was attending an investigation of a grievance that had been filed against Melvin Judkins for, among other things, discriminating against the Plaintiff on the basis of gender-related identity, the investigator who worked for the County of Cook acted shocked when the Plaintiff asked her where the men's bathroom was, and questioned his use of the men's bathroom.

12. This severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation.

13. The purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work.

14. As a proximate result of the disclosure by Melvin Judkins to the Plaintiff's co-workers of the Plaintiff's transgender status, the Plaintiff

reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, because of the hostile, and abusive work environment he experienced, thereby losing income he would otherwise have earned.

15. The Plaintiff, on or about October 1, 2018, contacted his union representative, who, in turn, filed a grievance under the applicable collective bargaining agreement on the Plaintiff's behalf on or about October 16, 2018, relating to, among other things, Melvin Judkins' disclosure of the Plaintiff's transgender status to his co-workers. During the course of the investigation of said grievance, the Plaintiff informed his employer about all of the harassment described above, and requested that his employer take action to insure that such harassment would not continue should he resume reporting for work for the employer. The Plaintiff specifically requested, among other things, a policy review relating to transgender employees and holding accountable employees who harass or discriminate against transgender employees, as well as cultural competency training of employees relating to transgender issues and the need to treat transgender co-workers no differently than anyone else.

16. The Plaintiff's employer has refused to take any action to end the hostile and abusive work environment experienced by the Plaintiff because he is transgender, and the Plaintiff's employer has demanded that the Plaintiff report to work before any actions have been taken by the employer to end the hostile and abusive work environment.

17.  The Plaintiff has lost income as a proximate result of the hostile and abusive work environment in that he has been on unexcused and unpaid leave since on or about September 28, 2018.

18.  As a result of said hostile and abusive work environment, the Plaintiff has experienced mental and emotional pain and suffering well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

19.  On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the first count of which alleged a discriminatory hostile, intimidating, and offensive work environment. A true and correct copy of said charge is attached hereto as Exhibit B.

20.  On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

21.  On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court.  A true and correct copy of said notice is attached hereto as Exhibit D.

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this

Court enter a judgment:

(a)  Ordering the Defendant, COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b)  Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c)  Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d)  Awarding the Plaintiff his litigation costs; and

(e)  Granting the Plaintiff such other and further relief as the nature of the case may permit.

## COUNT V

(Violation of the Illinois Human Rights Act—
Segregation based on gender-related identity—
against Defendant COUNTY OF COOK, d/b/a
COOK COUNTY HEALTH & HOSPITALS
SYSTEM and/or CERMAK HEALTH SERVICES)

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail.  Since commencing that employment, the Plaintiff's employer has been Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

3.  Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Melvin Judkins has been his immediate supervisor.  Melvin Judkins, is, like the Plaintiff, an employee of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

4.  At all relevant times herein mentioned, the Plaintiff's performance as a Correctional Medical Technician II met his employer's reasonable expectations.

5.  The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male.  Said transition requires and involves medical interventions, including, but not limited to, hormone therapy.  The Plaintiff has presented as a male person since 2003.  In and around 2003, the Plaintiff became legally male under law.

6.  In 2013, within the Cook County jail, a tier was opened in Division 6

for protective custody of transgender detainees.

7.  Commencing in and around the last quarter of 2017 and continuing thereafter, the Plaintiff was never assigned to Division 6 of the Cook County jail.

8.  Melvin Judkins, the Plaintiff's immediate supervisor, has stated that the reason that the Plaintiff has not been assigned to Division 6 is because the Plaintiff is transgender.

9.  This action of not assigning the Plaintiff to work in Division 6 constitutes segregation of the Plaintiff by his employer on the basis of his gender-related identity.

10.  Working in Division 6 is a desirable assignment because Division 6 is a minimum security section of the jail with a smaller population.

11.  This segregation tended to deprive the Plaintiff of a job opportunity, *i.e.*, the experience of working as a correctional medical technician in a minimum security section of a jail which housed exclusively transgender detainees, something that could be positive on the Plaintiff's resume going forward.

12.  As a proximate result of being segregated by his employer on the on the basis of his gender-related identity, the Plaintiff has experienced mental and emotional pain and suffering as well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

13.  On or about January 16, 2019, the Plaintiff filed a Charge of

Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the second count of which alleged that the Plaintiff was not assigned to certain areas of the Cook County jail because of his gender-related identity.  A true and correct copy of said charge is attached hereto as Exhibit B.

14.  On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

15.  On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court.  A true and correct copy of said notice is attached hereto as Exhibit D.

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)  Ordering Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b)  Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY

HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES,

compensatory damages in an amount to be determined by the jury in excess of

FIFTY THOUSAND DOLLARS ($50,000.00);

(c)  Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's

fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d)  Awarding the Plaintiff his litigation costs; and

(e)  Granting the Plaintiff such other and further relief as the nature of

the case may permit.

COUNT VI

(Violation of the Illinois Human Rights Act—<br>
Discrimination based on gender-related identity—<br>
refusing to put the Plaintiff on paid leave of absence—<br>
against Defendant COUNTY OF COOK, an Illinois<br>
county, d/b/a COOK COUNTY HEALTH & HOSPITALS<br>
SYSTEM and/or CERMAK HEALTH SERVICES)

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his

attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF

COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS

SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the

County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working

as a Correctional Medical Technician II in the Cook County jail.  Since

commencing that employment, the Plaintiff's employer has been Defendant

COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH &

- 27 -

HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

3.   At all relevant times herein mentioned, the Plaintiff's performance as

a Correctional Medical Technician II met his employer's reasonable

expectations.

4.   Since the Plaintiff commenced working at the Cook County jail in

February of 2013 as a Correctional Medical Technician II, Melvin Judkins has

been his immediate supervisor.  Melvin Judkins is, like the Plantiff, an

employee of Defendant COUNTY OF COOK, d/b/a/ COOK COUNTY HEALTH &

HOSPITAL SYSTEMS and/or CERMAK HEALTH SERVICES.

5.   The Plaintiff is a transgender person, meaning that his designated sex

at birth was female, but that, commencing in and around 2003, he began his

transition to male.  Said transition requires and involves medical interventions,

including, but not limited to, hormone therapy.  The Plaintiff has presented as

a male person since 2003.  In and around 2003, the Plaintiff became legally

male under law.

6.   Commencing in and around 2008, the Plaintiff sought to keep his

transgender status private; since then and until the Plaintiff was outed at work

by Melvin Judkins as set forth hereinafter, the Plaintiff chose to disclose his

transgender status to only close friends, not to neighbors, casual

acquaintances, or co-workers.  From and after 2008, when applying for

employment, the Plaintiff did not disclose his transgender status.

7.   Within the transgender community, the term "living in stealth" is

used to refer to people who are not out to the public about their transgender

status. From 2008 until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff was living in stealth.

8. From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

9. In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

10. There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

11. Commencing in 2018, the Plaintiff began experiencing pervasive and unwelcome harassment from co-workers at the Cook County jail, all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity. At first, there was nothing about the harassment which caused the Plaintiff to realize that it was based on his perceived or actual gender-related identity. Co-workers started shunning the Plaintiff and would not communicate with him. This happened on a daily basis and continued until

the Plaintiff ceased reporting to work on or about October 1, 2018, after he was outed as transgender by Melvin Judkins. Commencing in and around May of 2018, some of the harassment appeared to relate explicitly to the Plaintiff's perceived or actual gender-related identity. For example, in the late spring or early summer of 2018, Shirley McBride, a paramedic (Emergency Response Technician) and co-worker of the Plaintiff, told the Plaintiff while laughing, "You really do have a big ass, don't you?" In the late spring or early summer, M. Brittman, a Correctional Medical Technician II, referred to the Plaintiff as "girl". And in August of 2018, a nurse whose last name is Bradford told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed." On or about September 28, 2018, Melvin Judkins, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is, in fact, transgender. In and around October of 2018, when the Plaintiff was attending an investigation of a grievance that had been filed against Melvin Judkins for, among other things, discriminating against him on the basis of gender-related identity, the investigator who worked for the County of Cook acted shocked when the Plaintiff asked her where the men's bathroom was, and questioned his use of the men's bathroom.

12. This severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation.

13. The purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work

performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work.

14.   As a proximate result of the disclosure by Melvin Judkins to the Plaintiff's co-workers of his transgender status, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018.

15.   The Plaintiff, on or about October 1, 2018, contacted his union representative, who, in turn, filed a grievance under the applicable collective bargaining agreement on the Plaintiff's behalf on or about October 16, 2018, relating to, among other things, Melvin Judkin's disclosure of the Plaintiff's transgender status to his co-workers, and discrimination against the Plaintiff based on his gender-related identity.  The grievance sought, among other things, training of employees regarding transgender issues in the workplace.

16.   During the course of the investigation of said grievance, the Plaintiff informed his employer about all of the harassment described above, and requested that his employer take action to insure that such harassment would not continue should he resume reporting for work for the employer.  The Plaintiff specifically requested, among other things, a policy review relating to transgender employees and holding accountable employees who harass or discriminate against transgender employees, as well as cultural competency training of employees relating to transgender issues and the need to treat

transgender co-workers no differently than anyone else.

17. On or about October 23, 2018, the Plaintiff went to the office of Feroze Khan, the Leave Administration Manager for the Plaintiff's employer, and orally requested that he (the Plaintiff) be placed on a paid leave of absence until after the investigation and hearing on his union grievance.

18. On or about November 16, 2018, Feroze Khan sent a letter to the Plaintiff denying his request for paid leave of absence.

19. On information and belief, cis-gender employees similarly situated to the Plaintiff in that they had legitimate and reasonable fears for their physical safety at work have been given paid leaves of absence until the physical safety issues had been resolved.

20. The Plaintiff was denied a paid leave of absence by his employer because of the Plaintiff's gender-related identity.

21. To this date, the Plaintiff's employer has refused to take any action to end the hostile and abusive work environment experienced by the Plaintiff because he is transgender, and the Plaintiff's employer has demanded that the Plaintiff report to work before any actions have been taken by the employer to end the hostile and abusive work environment.

22. The Plaintiff has lost income as a proximate result of the discriminatory denial of his request for paid leave of absence.

23. As a proximate result of the discriminatory denial of the Plaintiff's request for paid leave of absence, the Plaintiff has experienced mental and emotional pain and suffering, as well as sleepless nights and hypertension, and

has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

24. On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the third count of which alleged discrimination based on gender-related identity in the denial of a paid leave of absence. A true and correct copy of said charge is attached hereto as Exhibit B.

25. On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

26. On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court. A true and correct copy of said notice is attached hereto as Exhibit D.

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a) Ordering Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights

Act;

(b)  Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c)  Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d)  Awarding the Plaintiff his litigation costs; and

(e)  Granting the Plaintiff such other and further relief as the nature of the case may permit.

## COUNT VII

(Violation of the Illinois Human Rights Act—
Retaliation for opposing discrimination based
on gender-related identity—denial of paid leave of
absence—against Defendant COUNTY OF COOK, an
Illinois county, d/b/a COOK COUNTY HEALTH &
HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES)

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.  The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

2.  In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working

as a Correctional Medical Technician II in the Cook County jail.  Since

commencing that employment, the Plaintiff's employer has been Defendant

COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH &

HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

3.  At all relevant times herein mentioned, the Plaintiff's performance as

a Correctional Medical Technician II met his employer's reasonable

expectations.

4.  Since the Plaintiff commenced working at the Cook County jail in

February of 2013 as a Correctional Medical Technician II, Melvin Judkins has

been his immediate supervisor.  Melvin Judkins is, like the Plaintiff, an

employee of Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH &

HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

5.  The Plaintiff is a transgender person, meaning that his designated sex

at birth was female, but that, commencing in and around 2003, he began his

transition to male.  Said transition requires and involves medical interventions,

including, but not limited to, hormone therapy.  The Plaintiff has presented as

a male person since 2003.  In and around 2003, the Plaintiff became legally

male under law.

6.  Commencing in and around 2008, the Plaintiff sought to keep his

transgender status private; since then and until the Plaintiff was outed at work

by Melvin Judkins as set forth hereinafter, the Plaintiff chose to disclose his

transgender status to only close friends, not to neighbors, casual

acquaintances, or co-workers.  From and after 2008, when applying for

employment, the Plaintiff did not disclose his transgender status.

7.  Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status.  From 2008 until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff was living in stealth.

8.  From and after the commencement of his employment, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions.  In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail.  See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

9.  In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender.  See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

10.  There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

11.  Commencing in 2018, the Plaintiff began experiencing pervasive unwelcome harassment from co-workers at the Cook County jail, all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity.  At first, there was nothing about the harassment which caused the Plaintiff to realize that it was based on his perceived or actual gender-related

identity. Co-workers started shunning the Plaintiff and would not communicate with him. This happened on a daily basis and continued until the Plaintiff ceased reporting to work on or about October 1, 2018, after he was outed as transgender by Melvin Judkins. Commencing in and around May of 2018, some of the harassment appeared to relate explicitly to the Plaintiff's perceived or actual gender-related identity. For example, in the late spring or early summer of 2018, Shirley McBride, a paramedic (Emergency Response Technician) and co-worker of the Plaintiff, told the Plaintiff while laughing, "You really do have a big ass, don't you?" In the late spring or early summer, M. Brittman, a Correctional Medical Technician II, referred to the Plaintiff as "girl". And in August of 2018, a nurse whose last name is Bradford told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed." On or about September 28, 2018, Melvin Judkins, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is, in fact, transgender. In and around October of 2018, when the Plaintiff was attending an investigation of a grievance that had been filed against Melvin Judkins for, among other things, discriminating against the Plaintiff on the basis of gender-related identity, the investigator who worked for the County of Cook acted shocked when the Plaintiff asked her where the men's bathroom was, and questioned his use of the men's bathroom.

12. This severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation.

13.  The purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work.

14.  As a proximate result of the disclosure by Melvin Judkins to the Plaintiff's co-workers of his transgender status, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018.

15.  The Plaintiff, on or about October 1, 2018, contacted his union representative, who, in turn, filed a grievance under the applicable collective bargaining agreement on the Plaintiff's behalf on or about October 16, 2018, relating to, among other things, Melvin Judkin's disclosure of the Plaintiff's transgender status to his co-workers, and discrimination against the Plaintiff based on his gender-related identity.  The grievance sought, among other things, training of employees regarding transgender issues in the workplace.

16.  During the course of the investigation of said grievance, the Plaintiff informed his employer about all of the harassment described above, and requested that his employer take action to insure that such harassment would not continue should he resume reporting for work for the employer.  The Plaintiff specifically requested, among other things, a policy review relating to transgender employees and holding accountable employees who harass or

discriminate against transgender employees, as well as cultural competency training of employees relating to transgender issues and the need to treat transgender co-workers no differently than anyone else.

17.  On or about October 23, 2018, the Plaintiff went to the office of Feroze Khan, the Leave Administration Manager for the Plaintiff's employer, and orally requested that he (the Plaintiff) be placed on a paid leave of absence until after the investigation and hearing on his union grievance.

18.  On or about November 16, 2018, Feroze Khan sent a letter to the Plaintiff denying his request for paid leave of absence.

19.  On information and belief, cis-gender employees similarly situated to the Plaintiff in that they had legitimate and reasonable fears for their physical safety at work have been given paid leaves of absence until the physical safety issues had been resolved.

20.  The Plaintiff was denied a paid leave of absence by his employer in retaliation for the Plaintiff's opposing that which he reasonably and in good faith believed to be unlawful discrimination against himself based on his gender-related identity.

21.  To this date, the Plaintiff's employer has refused to take any action to end the hostile and abusive work environment experienced by the Plaintiff because he is transgender, and the Plaintiff's employer has demanded that the Plaintiff report to work before any actions have been taken by the employer to end the hostile and abusive work environment.

22.  The Plaintiff has lost income as a proximate result of the retaliatory

denial of his request for paid leave of absence.

23.  As a result of the retaliatory denial of his request for paid leave of absence, the Plaintiff has experienced mental and emotional pain and suffering as well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

24.  On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the fourth count of which alleged retaliation for opposing unlawful discrimination in the form of denial of a paid leave of absence.  A true and correct copy of said charge is attached hereto as Exhibit B.

25.  On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

26.  On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court.  A true and correct copy of said notice is attached hereto as Exhibit D.

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this

Court enter a judgment:

(a) Ordering Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b) Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c) Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d) Awarding the Plaintiff his litigation costs; and

(e) Granting the Plaintiff such other and further relief as the nature of the case may permit.

<u>JURY DEMAND</u>

The Plaintiff, LOGAN M. GRIMES, demands trial by jury on all counts.

LOGAN M. GRIMES


JOANIE RAE WIMMER                    By: _____/s/ Joanie Rae Wimmer_____
Attorney at Law                                      Attorney for the Plaintiff
715 Lake Street, Suite 516
Oak Park, Illinois  60301
(630) 810-0005
jwimmerlaw@sbcglobal.net
Attorney No. 3125600