IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOGAN M. GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| COUNTY OF COOK, an Illinois | ) | No. 1:19-cv-06091 |
| county, d/b/a COOK COUNTY | ) | |
| HEALTH & HOSPITALS SYSTEM | ) | |
| and/or CERMAK HEALTH SERVICES; | ) | |
| and MELVIN JUDKINS, in his | ) | |
| individual capacity; | ) | Judge Gary S. Feinerman |
| | ) | |
| Defendants. | ) | Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Now comes the plaintiff, Logan M. Grimes ("Grimes"), by and through his attorney, Joanie Rae Wimmer, and submits this response to the Defendants' motion to dismiss the plaintiff's second amended complaint (referred to hereinafter simply as the "complaint").

**Background.** Grimes is a transgender person. As defined by Merriam-Webster, transgender means "of, relating to, or being a person whose gender identity differs from the sex the person had or was identified as having at birth." https://www.merriam-webster.com/dictionary/transgender

Grimes' designated sex at birth was female. In 2000, when he was 37 years old, Grimes was diagnosed with a medical condition then known as gender identity disorder (DSM-IV), now known as gender dysphoria (DSM-V). In order to treat his gender dysphoria, Grimes underwent a series of medical interventions, including hormone therapy (treatment with testosterone), as

- 1 -

well as chest reconstructive surgery and genital surgeries, now known as gender confirmation surgeries. The surgeries were completed by 2006. (Grimes is still having hormone therapy.) (Count I, ¶4.) As a result of the medical procedures outlined above, before 2008, Grimes had male pattern baldness, a low (male) voice, a full beard, and a male build. Since before 2008, Grimes has presented as unambiguously male. (Count I, ¶5) Grimes is recognized medically as male and is legally male. (Count I, ¶6) As of 2008 and thereafter, to disclose to a third party that Grimes was transgender would be tantamount to disclosing that Grimes had a significant medical condition and significant medical interventions because (1) no one could look or sound like Grimes whose designated sex at birth was female without significant interventions, (2) the combination of surgeries which Grimes had were available only to persons diagnosed with gender dysphoria, and (3) a person does not transition from one sex to the other unless they suffer from gender dysphoria, formerly known as gender identity disorder. (Count I, ¶5) Commencing in 2008, Grimes has kept his transgender status private. (Count I, ¶7)

In 2013 Grimes began working as a Correctional Medical Technician II at the Cook County jail. His employer is the County of Cook, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services (hereinafter referred to as "the County of Cook"). (Count I, ¶2) According to count IV of the complaint, in 2018 Grimes began experiencing harassment at work. (Count IV, ¶11) According to count IV, beginning in May of 2018, "some of the harassment *appeared* to relate explicitly to the Plaintiff's *perceived or actual* gender-related identity." (Count IV, ¶11) (Emphasis added.)

In 2013, the Cook County jail opened up a tier in Division 6 for protective custody of transgender detainees. (Count V, ¶6) Commencing in the last quarter of 2017, Grimes was never assigned to Division 6. (Count V, ¶7)

On September 28, 2018, Grimes' supervisor, Melvin Judkins ("Judkins"), while at work at the jail, and acting under color of law, told co-workers of Grimes that Grimes is transgender, and that was why Grimes was no longer assigned to Division 6. (Count I, ¶13) (The Defendants, in their motion, claim that Grimes "alleges Judkins engaged in . . . gossip." (Motion, p. 2) That is not what the complaint alleges.) Since September 28, 2018, Grimes has been on an unexcused and unpaid leave of absence from work. (Count I, ¶17)

**Standard of review.** When a defendant makes a motion to dismiss under Rule 12(b)(6), the sufficiency of the plaintiff's complaint is to be determined under Fed.R.Civ.P. 8(a) which requires, in relevant part, only "a short and plain statement of the claim showing that the pleader is entitled to relief." (Fed.R.Civ.P. 8(a).) In evaluating a motion to dismiss under Rule 12(b)(6), all of the factual allegations in a complaint are to be taken as true. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).) Moreover, in assessing a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint are to be viewed in the light most favorable to the plaintiff (*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)), and all possible inferences based on those facts are to be drawn in the plaintiff's favor (*Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). As the Supreme Court stated in *Iqbal*, Rule 8 does not require "detailed factual allegations", but rather requires only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). (*Iqbal*, 556 U.S. 662, 678). Although the plausibility standard asks for more than "a sheer possibility that a defendant has acted unlawfully," "it is not akin to a 'probability requirement.'" (*Iqbal*, 556 U.S. 662, 678.) A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. (*Iqbal*, 556 U.S. 662, 678.) The complaint must have

"'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations" (citing *Bell Atlantic*, 550 U.S. 544, 556). *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011).

**Count I.** Count I is brought against Judkins, in his individual capacity. The County of Cook is also named as a defendant but solely for purposes of indemnification. Count I, brought under 42 U.S.C. §1983, alleges that Judkins violated Grimes' constitutional right to substantive due process by disclosing to Grimes co-workers that he is transgender.

In *Whalen v. Roe*, 429 U.S. 589 (1977), the Court, in a case dealing with a law requiring state officials to record and maintain the names and addresses of all persons who had been prescribed certain drugs, stated that "concept of personal liberty and restrictions upon state action" in the Fourteenth Amendment (*Id.*, at 598, n. 23) protected the interest of persons "in avoiding disclosure of personal matters" and the interest "in independence in making certain kinds of important decisions (*Id.*, at 599-600). See also *Nixon v. Administrator of General Services*, 433 U.S. 425, 455-465 (1977).

In *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995), the Seventh Circuit, in a case brought by a prisoner against two prison guards who had told other people that the prisoner was HIV-positive, stated that it had previously recognized a qualified constitutional right to the confidentiality of medical records and medical communications. In *Anderson*, however, the Court stated that its prior cases involved "free persons" (*Id.*, at 522), and that the prison guards in that case were entitled to qualified immunity because it was not clearly established that disclosure of HIV status of prisoners was not justified to protect others in the prison context. In *Denius v. Dunlap*, 209 F.3d 944 (7th Cir. 2000), the Seventh Circuit upheld a claim that the plaintiff's right to substantive due process was violated to the extent that he was required, in

order to continue his public employment, to authorize the disclosure of his medical information to his public employer. The Court denied qualified immunity, stating that it had recognized "a substantial privacy interest in the confidentiality of medical information" (*Id.*, at 956), citing *Schaill v. Tippecanoe County School Corp.*, 864 F.2d 1309, 1322, n. 19 (7th Cir. 1989), and that the defendant was on notice that "this type of information has constitutional protection in this Circuit and that the State cannot require its disclosure without a sufficient countervailing interest." (*Id.*, at 956-957) The Seventh Circuit has recognized that gender identity disorder, n/k/a gender dysphoria, the condition that transgender people have, is a serious medical condition. *Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011).

In *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999), the Court held that "the Constitution does indeed protect the right to maintain the confidentiality of one's transsexualism." The Court stated that the interest in privacy of transsexuals was "compelling," and that "[l]ike HIV status . . . transsexualism is the unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." (*Id.*, at 111.) In *Love v. Johnson*, 146 F.Supp.3d 848 (E.D.Mich. 2015), the court denied a motion to dismiss a challenge to Michigan's law requiring a birth certificate for a transgender person to change the sex on their driver's license. The court, citing *Whalen*, held that the claim implicated the "interest in avoiding disclosure of personal matters." (*Id.*, at 853.) Quoting *Farmer v. Moritsugu*, 163 F.3d 610, 611 (D.C.Cir. 1998), the court in *Love* stated that "there is no question that '[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate.'" (*Love*, at 855.) See also *Gonzalez v. Nevares*, 305 F.Supp.3d 327, 333 (D.P.R. 2018) (Puerto Rico's law precluding transgender people from changing the gender marker on their birth

certificates "forces them to disclose their transgender status in violation of their constitutional right to informational privacy," and "is not justified by any legitimate government interest").

In light of the Seventh Circuit's recognition in *Fields* that gender identity disorder, n/k/a gender dysphoria, is a serious medical condition, and the Seventh Circuit's holding in *Denius* that under the Due Process Clause there is a "'substantial' right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest" (*Denius*, at 956), Judkins' argument that he is entitled to qualified immunity with respect to this claim is untenable. Judkins has suggested no governmental interest in disclosing Grimes' transgender status to his co-workers. In fact, the Defendants have argued that, in making the disclosure, Judkins was simply gossiping. (Defendants' motion, p. 2) A reasonable employment supervisor in Judkins' position should have known that the disclosure was in violation of Grimes' constitutional rights. See the detailed discussion of the scope of qualified immunity in *Denius*, at 950-951.

At the presentment of this motion, there was discussion about direct rather than indirect disclosure of confidential medical information. So, for example, a supervisor might say to employee A, "I am glad that you are feeling better." After employee A leaves, employee B, who overheard this exchange, might ask the supervisor, "What happened to employee A?" And the supervisor might reply, "His doctor adjusted his HIV medicine." Or, alternatively, the supervisor might reply, "You'll have to discuss that with employee A." The first disclosure, resulting from the statement, "I am glad that you are feeling better," would be indirect. The second, "His doctor adjusted his HIV medicine," would be a direct disclosure that employee A had a serious medical condition. Here, the disclosure that Grimes is transgender was the disclosure of a serious medical condition, gender dysphoria, f/k/a gender identity disorder. That

disclosure, coupled with Grimes' appearance, voice, and presentation amounted to a direct disclosure of, not only a serious medical condition, but of medical interventions that treated that condition.

The Defendants make much of the fact that the complaint does not allege how Judkins became privy to the fact of Grimes' transgender status. (It does, of course, allege that Judkins, as supervisor, was making official employment decisions on where to assign Grimes based on Grimes' transgender status.) But there is no requirement that the Plaintiff allege how the information was obtained. It is the disclosure of the confidential medical information which is a violation of the Due Process Clause. If a government employee tells someone that employee A is HIV positive without any strong state interest in the disclosure, they are violating employee A's Due Process rights even if employee A does not know how the government employee obtained that information.

The Defendants state "Judkins did not have access to any confidential information regarding Plaintiff." (Motion, p. 6) It is not clear where the Defendants are getting this supposed information. It is not in the complaint. In fact, the complaint alleges that Judkins told Grimes' co-workers that the reason why Grimes was not being assigned to Division 6, where there is a tier for protective custody of transgender detainees, was because Grimes is transgender. (Count V, ¶8) It is a reasonable inference from the fact that Judkins was Grimes' supervisor, and that official work assignments were being based on Grimes' transgender status, that Judkins did, in fact, have confidential information about Grimes' transgender status.

The Defendants also reference the fact that count IV alleges that, prior to Judkins' conduct in outing Grimes, there were three instances of harassment of Grimes by his co-workers which "*appeared* to relate explicitly to the Plaintiff's *perceived or actual* gender-related

identity." (Emphasis added.) (Count IV, ¶11) The Defendants do not really develop an argument as to why that allegation, even if can be considered in evaluating count I (see discussion about pleading alternatively under Fed.R.Civ.P. 8 below), somehow defeats the claim. Suppose that an employee has suspicions that his co-worker is HIV-positive. Would that somehow immunize a supervisor who discloses that the co-worker is, in fact, HIV-positive? In any event, the Defendants have not presented an argument as to why the harassment allegations of count IV somehow defeat the constitutional claim asserted in count I.

Count I should not be dismissed for failure to state a claim or on grounds of qualified immunity.

**Count II.** Count II is a state law tort claim for invasion of privacy—public disclosure of private facts brought against Judkins based on his disclosure to Grimes' co-workers that Grimes is transgender. Judkins argues that this claim should be dismissed pursuant to §2-210 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") (745 ILCS/10/2-210) which immunizes any public employee "acting in the scope of his employment" for providing information. The problem for Judkins is that count II alleges that "[i]n outing the Plaintiff as transgender to the Plaintiff's co-workers as set forth above, Defendant MELVIN JUDKINS . . . was not acting within the scope of his employment." (Count II, ¶12) In support of that conclusion, Grimes alleges the fact that, in outing him as transgender to his co-workers, Judkins was "not motivated or actuated by a purpose to serve his employer." (Count II, ¶12) Illinois law provides that if an employee's conduct is not, at least in part, actuated by a purpose to serve the employer, the conduct is not within the scope of employment. *Adames v. Sheahan*, 233 Ill. 2d 276, 909 N.E.2d 742, 755 (2009).

The Defendants argue that count II should be dismissed because count I alleges that

Judkins' conduct was within the scope of his employment. That argument is without merit. Fed.R.Civ.P. 8(d)(3) states, "A party may state as many separate claims or defenses as it has, regardless of consistency." Whether Judkins was, as the Defendants claim, merely engaging in gossip (Motion, p. 2), or whether he was intending to serve the interest of his employer somehow in disclosing Grimes' transgender status to his co-workers, is a question that the trier of fact may be called on to make. It cannot be determined at this time, without further development of the facts, how a jury will decide that question.

The Defendants also argue that the invasion of privacy—public disclosure of private fact claim is preempted by Grimes' claims under the Illinois Human Rights Act ("IHRA") (775 ILCS 5/1-101, *et seq.*). This argument is without merit. As stated in *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 687 N.E2d 21, 24 (1997), "where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act," the tort claim is not inextricably linked with the IHRA claim and is not preempted. See also *Naeem v. McKesson Drug Co.*, 444 F.3d 593 (7th Cir. 2006), upholding claim of intentional infliction of emotional distress in the employment context. The elements of the tort of invasion of privacy—public disclosure of private fact are that a defendant gave publicity to a private fact, disclosure of the fact would be highly offensive to a reasonable person, and the fact was not of legitimate public concern. See *Miller v Motorola*, 202 Ill. App. 3d 976, 560 N.E.2d 900, 903 (1st Dist. 1990) (disclosure of the plaintiff's mastectomy by her employer could be "highly offensive to a reasonable person"). Grimes can establish these elements independently of any legal duties created by the IHRA. The Defendants' claim that this tort is preempted is without merit. The tort claim would have existed regardless of whether Grimes had been harassed at work.

Finally, the Defendants argue that this claim should be dismissed because Grimes'

transgender status was not a private fact. This argument is not well taken. Count II alleges that Grimes' transgender status was a private fact, and alleges facts in support of that assertion, including, but not limited to, the fact that he did not disclose his transgender status to co-workers. (Count II, ¶5) The Defendants argue that "Plaintiff admits in his complaint that certain coworkers were aware of his transgender status as early as May 2018," referencing count IV, ¶11, and count VI, ¶11. (Motion, p. 10) Setting aside the inappropriateness of taking allegations from one count and trying to use them to defeat a different count (under Fed.R.Civ.P. 8, counts do not have to be factually consistent), the complaint does not admit that certain coworkers were aware of his transgender status as early as May, 2018. What paragraphs 11 in counts IV and VI allege is that, commencing in May of 2018, some of the harassment "*appeared* to relate explicitly to the Plaintiff's *perceived* or actual gender-related identity." (Emphasis added.) Those allegations do not admit that certain co-workers knew that Grimes was transgender, nor do those allegations establish that Grimes' transgender status was not a private fact. There is a difference between suspecting that a person might be transgender and being informed by the person's supervisor at work that the person is transgender, and that that is why he is not given certain assignments. The elements of the tort are adequately pleaded in count II, and they are not negated by any allegations in the other counts.

**Count III.** Count III is Grimes' claim under state law for intentional infliction of emotional distress ("IIED") against Judkins premised on Judkins' conduct in outing Grimes as transgender to his co-workers. As with count II, the Defendants move to dismiss count III based on the theory that this tort claim is preempted by the IHRA. The argument fails here for the same reason it failed with respect to count II. The question is whether Grimes "can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by

the IHRA." (*Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).) Obviously, Grimes can. The elements of IIED are (1) the defendants' conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was a high probability that his conduct would inflict severe emotional distress, and (3) the defendants' conduct did cause severe emotional distress. (*Id.*, at 605.) As in *Naeem*, Grimes allegations establish the necessary elements of the tort "independent of any duties not to discriminate" against Grimes. (*Id.*, at 605.) The tort claim, which is premised on Judkins outing Grimes as transgender, would have existed whether or not he was harassed at work based on his gender-related identity.

As with count II, the Defendants also seek to dismiss count III based on §2-210 of the Tort Immunity Act. As in the case of count II, Grimes alleged in count III that, in outing Grimes, Judkins was not acting within the scope of his employment, and that Judkins, in making the disclosure, was not motivated or actuated by a purpose to serve his employer. (Count III, ¶12) The Defendants' argument premised on the Tort Immunity Act fails here for the same reason that it fails with respect to count II.

**Count IV.** Count IV is the count of the complaint brought under the IHRA which alleges that Grimes was subjected to a hostile and offensive work environment based on his gender related identity. The only argument proffered by the Defendant employer against this count is that "[p]lantiff has not pled that the conduct was severe and pervasive to substantially interfere with his work performance or create an offensive working environment." (Motion, p. 11) That argument is without merit. Count IV alleges that "[c]ommencing in 2018, the Plaintiff began experiencing pervasive and unwelcome harassment," "all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity." (Count IV, ¶11) On a daily basis, co-

workers shunned Grimes and would not communicate with him. Count IV alleges that one of Grimes' co-workers told Grimes while laughing, "You really do have a big ass, don't you." Another co-worker referred to Grimes as "girl." In one of the comments that could be interpreted as a threat, a third co-worker told Grimes, while referring to an unidentified individual who appeared to be female: "You see that. That's a man. People ought to tell who they really are. That's how people get killed." Judkins disclosed to Grimes' co-workers that he is transgender, and Grimes was questioned about his use of the male bathroom. (Count IV, ¶11) Count IV alleges that the "severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation" (count IV, ¶12), and "[t]he purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work." (Count IV, ¶13)

The Defendant employer seems to be under the impression that a plaintiff must set forth all of his evidence in the complaint. That is not the standard. "A pleaders' responsibility is to state a claim for relief that is plausible on its face." (*Huri v. Office of the Chief Judge*, 804 F.3d 826, 832-833 (7th Cir. 2015).) In discrimination cases, "A complaint that identifie[s] 'the type of discrimination' the plaintiff thought occurred, 'by whom, . . . and when' [is] 'all [the plaintiff] need[ed] put in her complaint." (*Id.*, at 833.) The pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations. (*Id.*, at 833.) In *Huri* the Seventh Circuit held:

> "[I]t is premature at the pleadings stage to conclude just how abusive Huri's work environment was. It is enough to say that it is plausible that the screaming, prayer circles, social shunning, implicit criticism of non-Christians, and uniquely bad treatment of Huri and her daughter could plausibly be abusive."

*Id.*, at 834.

And in *Roberts v. Clark County School District*, 215 F.Supp.3d 1001, 1017 (D.Nev. 2016), the court denied the Defendant's motion for summary judgment where the school district disclosed the plaintiff's transgender status to his co-workers, inviting the co-workers to ask the plaintiff questions about his transition, and where department staff made inappropriate comments about the plaintiff's genitalia, among other things.

Here, the daily social shunning, the disclosure of Grimes' transgender status to his co-workers, the questioning of his use of the men's bathroom, and the inappropriate and threatening comments made by Grimes' co-workers as alleged in the complaint are sufficient to plead a plausible claim.

**Count V.** Count V is Grimes's claim under state law (IHRA) that his employer segregated him based on gender-related identity when it decided to stop assigning him to Division 6 of the Cook County jail, the division which had a tier for protective custody of transgender employees. The Defendant employer argues this count is insufficient because it does not allege an "adverse employment action." This argument is not well-taken. Under Title VII, the federal statute, a plaintiff alleging a claim of "segregation" need not prove an "adverse employment action." (*EEOC v. Autozone, Inc.*, 860 F.3d 564, 569 (7th Cir. 2017).) That is because of the statutory language covering claims of "segregation" under Title VII (42 U.S.C. §2000e-2(a)). (*Id.*, at 568) Under Title VII, a plaintiff alleging segregation need prove only that the segregation had a tendency to deprive the plaintiff of employment opportunities. Here, count V alleges that the segregation "tended to deprive the Plaintiff of a job opportunity, *i.e.*, the experience of working as a correctional medical technician in a minimum security section of a jail which housed exclusively transgender detainees, something that could be positive on the

Plaintiff's resume going forward." (Count V, ¶11) Count V also alleges that "[w]orking in Division 6 is a desirable assignment because Division 6 is a minimum security section of the jail with a smaller population." (Count V, ¶10)

Moreover, Illinois courts do not adopt the framework used by the federal courts in addressing discrimination claims under Title VII in cases where the Illinois statute differs from the federal statute. See *Sangamon County Sheriff's Department v. Illinois Human Rights Commission*, 233 Ill. 2d 125, 908 N.E.2d 39, 45-46 (2009). The Illinois statute is different from Title VII, and, with respect to claims of segregation, the Illinois statute appears not even to require the plaintiff to prove a tendency to deprive the claimant of an employment opportunity. Section 2-102 of the IHRA provides, in relevant part:

> "It is a civil rights violation: (A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status."

(775 ILCS5/2-102.)

(This is the version of the statute in effect at the time of the filing of this reponse and of the events described in the complaint.) Under this Illinois statute, segregation is forbidden in the same manner as refusal to hire. The concept of an "adverse employment action" or a "materially adverse employment action" may be helpful in interpreting the language "otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" in Title VII (42 U.S.C. §2000-e-2(a)), but the Illinois statute appears to place segregation on a par with refusal to hire. In other words, the Illinois statute appears to make segregation of employees illegal without regard to whether there are adverse consequences other than the segregation itself, the position being advocated by the EEOC for Title VII in

- 14 -

*Autozone*. Count V is sufficient to plead segregation.

**Counts VI and VII.** Counts VI and VII are discrimination claims under the IHRA. They allege that cis-gender employees similarly situated to Grimes in that they had legitimate and reasonable fears for their physical safety at work have been given paid leaves of absence until the physical safety issues had been resolved (count VI, ¶19, count VII, ¶19), but that Grimes was denied paid leave because of his gender-related identity (count VI, ¶20) and in retaliation for opposing what he reasonably and in good faith believed to be unlawful discrimination against himself based on his gender-related identity (count VII, ¶20). The Defendant employer argues that these counts should be dismissed because they do not allege an "adverse employment action." This argument is without merit. Denial of paid leave is an adverse employment action. See *Campbell v. Griffin*, 2007 WL 9757521 (S.D.Tex. 2007) (Page 4); *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 521-522 (5th Cir. 2001). If it were not, a company could have a policy providing for paid leave for white workers only. Counts VI and VII are sufficient.

**Conclusion.** For the reasons set forth above, the Plaintiff, Logan M. Grimes, respectfully requests this Court to deny the Defendants' motion to dismiss, or, in the alternative, if the Court determines that one or more counts are insufficiently pleaded but may be amended to state a claim, to grant the Plaintiff leave to further amend his complaint.

                                              Respectfully submitted,

JOANIE RAE WIMMER  
Attorney at Law                                           _____/s/ Joanie Rae Wimmer_____  
715 Lake Street, Suite 516                                   Joanie Rae Wimmer  
Oak Park, Illinois 60301  
(630) 810-0005  
jwimmerlaw@sbcglobal.net  
Attorney No. 3125600