IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOGAN M. GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No. 19-cv-06091 |
| COUNTY OF COOK, an Illinois | ) | |
| county, d/b/a COOK COUNTY | ) | Judge Gary Feinerman |
| HEALTH & HOSPITALS SYSTEM | ) | |
| and/or CERMAK HEALTH SERVICES; | ) | Magistrate Judge Jeffrey T. Gilbert |
| and MELVIN JUDKINS, in his | ) | |
| individual capacity; | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants COUNTY OF COOK and MELVIN JUDKINS, through their attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, by her Assistant, Colleen Harvey, and in reply in further support of their Motion to Dismiss Plaintiff's Second Amended Complaint and in order to respond to Plaintiff's arguments state as follows:

**INTRODUCTION**

Plaintiff acknowledges that he presented as a female until he was 40 years old. (Second Amended Complaint, Count I ¶¶ 4-5) In his Second Amended Complaint, Plaintiff alleges Judkins "outed him" as transgender after five years of working with him. While the operative complaint is silent as to how Judkins had knowledge of Plaintiff's transgender status and does not allege that Judkins had access to Plaintiff's medical records, Plaintiff alleges that after being outed, his work environment became hostile and he has been on unexcused and unpaid leave from his job since September 2018.

Plaintiff alleges that in outing him, Judkins violated his substantive due process right of privacy and also committed state-law torts. In moving to dismiss, Defendants argued that disclosing the fact that Plaintiff is transgender is not equivalent to disclosing confidential medical information. Moreover, Defendants argued that Judkins is entitled to qualified immunity on the federal claim and protected by the Tort Immunity Act on the state-law claims. Plaintiff's Response to Defendants' Motion to Dismiss Complaint ("Pl. Response") failed to adequately rebut the arguments set out in Defendants' motion. Defendants therefore respectfully request an order from this Court dismissing Plaintiff's Second Amended Complaint with prejudice.[1]

## ARGUMENT

### I. Plaintiff fails to state a substantive due process claim in Count I.

Plaintiff fails to cite any authority that Judkins' alleged disclosure of Plaintiff's transgender status constitutes a substantive due process claim. Courts have recognized two independent privacy interests are protected by the Constitution: (i) an individual's interest in avoiding disclosure of personal matters and (ii) an individual's interest in independence in making certain kinds of important decisions. *Whalen v. Roe*, 429 U.S. 589, 598-599; *Pesce v. J. Sterling Morton High School*, 830 F.2d 789, 796 (7th Cir. 1987). At issue here is an individual's interest in avoiding disclosure of personal matters; however the constitutional right to confidentiality does not protect against any and every disclosure. *Pesce*, 830 F.2d at 797.

While the Seventh Circuit recognized a constitutional right to the confidentiality of medical records and medical communications in *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995) and *Denius v. Dunlap,* 209 F.3d 944, 957 (7th Cir. 2000), here Plaintiff does not allege a disclosure

---

[1] Count I is the only count in Plaintiff's Second Amended Complaint which alleges a federal claim and thus, the Court may also dismiss Count I and relinquish jurisdiction of the state law claims to the state court.

of medical records or information. Plaintiff alleges in his Second Amended Complaint only that Judkins told coworkers that the fact that Plaintiff is transgender. (Second Amended Complaint, Count I, ¶13) Plaintiff argues that the Seventh Circuit has recognized gender identity disorder or gender dysphoria as a serious medical condition in *Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011) and thus, Judkins disclosed medical information about Plaintiff. (Pl. Response at 6) However, Plaintiff's argument is faulty, as he does not allege that Judkins disclosed to coworkers that Plaintiff had gender dysphoria or had undergone any medical interventions related to his transgender status. Noticeably absent from the operative complaint is any allegation that Judkins had any knowledge of or access to Plaintiff's medical file. Moreover, the complaint does not explain how Judkins knew of Plaintiff's status.

At the presentment of this motion, the Court inquired as to whether an indirect reveal that someone may have undergone medical treatment constitutes a substantive due process violation. Defendants maintain that Plaintiff's transgender status, standing alone, does not constitute private medical information. However, for the purposes of the Court's inquiry only, Defendants agree that disclosing confidential medical information such as what prescriptions are being taken by a specific employee or what medical procedures that employee has undergone may indirectly reveal that an individual has a medical condition. However, that is not what happened here. Case law on this question is limited, but courts have held the constitutional right to privacy is not violated by a disclosure which does not reveal a medical condition, but from which one could infer a conclusion about an individual's medical condition based on one's own personal knowledge.

For example, in *Levin v. Bd. of Educ. of Chicago*, 470 F. Supp. 2d 835, 841-842 (N.D. Ill. January 8, 2007), the plaintiff alleged that his employer violated his constitutional right to privacy by disclosing to coworkers that he had previously tested positive for tuberculosis when the

3

employer's health personnel instructed him to sit down and not participate in an annual tuberculosis screening. The court held that the plaintiff's belief that other employees were able to infer that he had tested positive based on the fact that he was not screened did not violate his constitutional right to privacy. *Id*. at 842. The court stated, "it is purely speculative to suggest that because plaintiff was not screened, others concluded that he had previously tested positive for tuberculosis. For a constitutional claim based on disclosure of medical information, *the crucial factor is what information was actually disclosed,* not what conclusions someone might reach based on his independent knowledge." *Id*., citing *Doe v. Southeastern Penn. Transp. Auth. (SEPTA),* 72 F.3d 1133, 1139 (3d Cir. 1995) (emphasis added). Moreover, the court noted that, "at best, any disclosure of plaintiff's medical condition was negligent. Mere negligence does not give rise to liability under § 1983." *Id.*

In *SEPTA* (relied upon by *Levin*), the plaintiff alleged a constitutional violation of privacy when his employer's benefits administrator revealed to the employer's staff physician that an unspecified employee was on a medication used to treat AIDS. *Id*. at 1136. While the administrator did not name the specific employee, the physician was able to deduce the plaintiff's identity based on his own independent knowledge of the plaintiff's condition. *Id*. The Third Circuit determined that the administrator's disclosure to the physician did not violate the plaintiff's constitutional right to privacy because she did not disclose the plaintiff's name to the physician, she only asked about him about a medication, and the physician independently concluded who the employee was due to the physician's own personal knowledge. *Id*. at 1139. The court noted that "it stretches any theory of liability far too thin to base an invasion of privacy on such conduct." *Id*.

Similar to *Levin* and *SEPTA*, the alleged disclosure here was indirect and does not rise to the level of a constitutional violation of privacy. Plaintiff's constitutional claim is based on speculation, as even if Judkins disclosed Plaintiff's transgender status, the disclosure itself does not reveal constitutionally protected medical information and any coworker to whom it was disclosed would have to use their own personal independent knowledge to conclude that Plaintiff underwent specific medical treatment as a result. Based on Plaintiff's allegations, Judkins was merely negligent in engaging in office gossip, but this negligence does not give rise to liability under § 1983. The information that Judkins is alleged to have disclosed is not constitutionally protected and on this basis, the Court should dismiss Count I.

**II. Judkins is entitled to qualified immunity.**

*Even if* Plaintiff had adequately pleaded a substantive due process claim, the claim still must be dismissed under the doctrine of qualified immunity. In his response, Plaintiff asserts that Judkins' assertion that he is entitled to qualified immunity is untenable due to the Seventh Circuit's holdings in *Fields* and *Denius*. (Pl. Response at 6) However, as discussed above, the holdings in *Fields* and *Denius* do not establish that Plaintiff had a constitutional interest in maintaining confidentiality regarding his transgender status. While *Denius* confirmed a constitutional right in the disclosure of medical records and communications, it did not extend this right to one's transgender status. *Denius*, 209 F.3d at 956. In *Denius*, the court held that the defendant was entitled to qualified immunity if any right he was alleged to have violated was not clearly established at the time in question. *Denius*, 209 F.3d at 951.

Pursuant to the defense of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

5

have known." *Lanigan v. Vill. Of E. Hazel Crest*, Ill., 110 F.3d 467, 471 (7th Cir. 1997). In order to be considered "clearly established," a right must be sufficiently clear that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation omitted). The constitutional question must be supported by existing precedent to render the principle "beyond debate." *Id*. Here Plaintiff has not defined a clearly established right which a reasonable person would have known.

No objectively reasonable official in Judkins' position would recognize that discussing or disclosing Plaintiff's transgender status would violate any substantive due process right or would have crossed a line "beyond debate." Plaintiff states, "Defendants make much of the fact that the complaint does not allege how Judkins became privy to the fact of Grimes' transgender status." (Pl. Response at 7) Defendants argue this point *because it is relevant* as to whether Judkins' alleged conduct rose to the level of a constitutional violation. Plaintiff does not allege that Judkins improperly accessed Plaintiff's medical records or had access to medical records via his employment. While there is no requirement that Plaintiff allege how the information was obtained, Plaintiff's allegations as stated imply that if Judkins did not improperly access the information, the information disclosed was not confidential and did not implicate Plaintiff's medical history. Given that Judkins did not have any access to confidential information regarding Plaintiff, Judkins would not have been on notice that such a disclosure could constitute a constitutional violation. Judkins is entitled to qualified immunity.

**III. Judkins is entitled to the protections of the Illinois Tort Immunity Act.**

Plaintiff next asserts that the Illinois Tort Immunity Act does not apply because Counts II and III of the Second Amended Complaint allege that Judkins was not acting in the scope of his employment. (Pl. Response at 8) However, Plaintiff alleges that the alleged torts occurred when

Plaintiff was at work at the Cook County Jail and involved disclosures to Plaintiff's co-workers. (Second Amended Complaint, Count II, ¶11; Count III, ¶11) In fact, in Count III, Plaintiff alleges that the disclosure took place in the course of a discussion regarding an applicant for employment at the jail. (Id., Count III, ¶10) Plaintiff then speculates that Judkins was "not motivated or actuated by a purpose to serve his employer," and concludes, without pleading any supporting facts, that thus Judkins was not acting in the scope of his employment. (Id., Count II, ¶12; Count III, ¶12)

Plaintiff cites *Adames v. Sheahan*, 233 Ill. 2d 276 (2009) for the contention that "if an employee's conduct is not, at least in part, actuated by a purpose to serve the employer, the conduct is not within the scope of employment," but this case is distinguishable. (Pl. Response at 8) In *Adames*, the Illinois Supreme Court held that a sheriff's deputy was not acting in the scope of his employment when he negligently stored his gun at his home, because storage of the gun was not the type of conduct he was employed to perform. *Id*. at 305. In *Adames*, the conduct at issue occurred outside of the workplace and did not concern the deputy defendant's coworkers or any relevant work matter. *Id*. at 280. In contrast, here Plaintiff alleges the conduct at issue occurred at work, involved his co-workers and an employment issue at the jail.

Plaintiff's pleadings in Counts II and III that that the incident occurred at work, involved coworkers and a discussion about an applicant, but that Judkins' actions were not in the scope of his employment are inconsistent and implausible. The contradictory allegations do not meet the *Iqbal/Twombly* standards of pleading, as the plaintiff's factual allegations must plausibly suggest that the plaintiff is entitled to relief, "*raising that possibility above a speculative level.*" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)(citing *Bell Atlantic v. Twombly*, 550 U.S. at 555, 1959 (2007))(*emphasis added*). While legal conclusions can provide the framework of a

7

complaint, the legal conclusions must be supported by factual allegations. *Ashcroft, et al. v. Iqbal, et al.*, 556 U.S. 662, 678 (2009). Here, Plaintiff plead no facts to support the conclusion that Judkins' conduct alleged in Counts II and III were not within the scope of his employment. Instead, the facts pleaded indicate that Judkins was acting within the scope of his employment. While Defendants recognize that the Federal Rules of Civil Procedure allow for the pleading of inconsistent claims, here the facts within Count II and within Count III are inconsistent. Further, Plaintiff pleads in Count I that the same exact actions were taken *within* the scope of Plaintiff's employment. (Second Amended Complaint, Count I, ¶14) Plaintiff is simply attempting to remove from Judkins the protections of the Illinois Tort Immunity Act without any supporting facts as to why he was acting outside the scope of his employment. The facts alleged by Plaintiff would support a finding that Judkins' was acting in the scope of his employment, and thus, Judkins is entitled to the protections of the Illinois Tort Immunity Act.

**IV. Plaintiff's tort claims are pre-empted by the IHRA.**

Even if the Tort Immunity Act did not apply, Plaintiff's tort claims are pre-empted by the IHRA because they are inextricably linked to his IHRA claim. In *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 519 (1997), the Illinois Supreme Court held that a common law tort claim is not inextricably linked with a civil rights violation "where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." Here, Plaintiff's tort claims are premised on the allegation that he was treated differently and improperly due to his gender identity, a protected status under the IHRA. Without being able to allege that Plaintiff's gender-related identity is protected, Plaintiff would not have an independent basis for his invasion of privacy and IIED claims. In *Smith v. Chicago Sch. Reform Bd. of Trustees*,165 F.3d 1142, 1151 (7th Cir. 1999), the Seventh Circuit upheld the district court's

dismissal of the plaintiff's IIED claims on pre-emption grounds, noting that "[r]acial discrimination was not 'merely incidental' to a mundane tort…it is the core of [plaintiff's] theory." Here, alleged discrimination of the basis of Plaintiff's gender identity is at the core of his Second Amended Complaint. Thus, Plaintiff's tort claims must also be dismissed on this ground.

**V. Plaintiff's invasion of privacy claim must fail because there was no disclosure of private facts.**

Plaintiff's Second Amended Complaint expressly alleges that certain coworkers of Plaintiff were aware of Plaintiff's transgender status and treated him differently because of his transgender status. (Second Amended Complaint, Count IV, ¶11, Count VI, ¶11) Plaintiff in his response tries to back out of these allegations by stating that he pleaded only that the conduct of his coworkers "appeared" to relate to Plaintiff's perceived gender identity but did not unquestionably relate to it. Plaintiff argues that there is a difference between suspecting a person might be transgender and being informed by a supervisor that a person is transgender. (Pl. Response at 10) However, Plaintiff does not plead only that his co-workers may have suspected his transgender status, he pleads "some of the harassment appeared to relate explicitly to Plaintiff's perceived or actual gender-related identity." This is more than mere suspicion.

A necessary element of public disclosure of private facts is that the facts disclosed have to be private, not public. *Wynne v. Loyola Univ. of Chicago*, 318 Ill. App. 3d 443, 453 (1st. Dist. 2000). In *Wynne*, the Illinois Appellate Court held that the facts at issue lost their private nature when plaintiff disclosed them to a few coworkers. *Id*. Plaintiff has failed to plead an essential element of invasion of privacy, and this claim should be dismissed.

**VI.     Plaintiff has not plead a hostile work environment.**

Plaintiff wrongly asserts that he has plead enough facts to establish a hostile and offensive work environment based on his gender related identity, that the conduct was severe and pervasive

9

to substantially interfere with his work performance or create an offensive working environment. *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005). Plaintiff in his response references allegations that his workers would not communicate with him, one co-worker told him he had a "big ass," one co-worker called him a "girl," and one co-worker, when referring to another individual, not to Plaintiff, said to Plaintiff, "that's how you get killed." (Pl. Response at 11-12) In the light most favorable to Plaintiff, at most, one or two of these comments may have related to Plaintiff's gender identity. None of these allegations impacted Plaintiff's work performance or terms and conditions of employment.

The conduct as alleged by Plaintiff is not so severe or pervasive that a reasonable person would have found it to be hostile and abusive. It is well established that Title VII is not a "general civility code." See *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988). Courts also have held that conduct significantly more egregious than what Plaintiff alleges here did not rise to the level of actionable harassment. In *Swyear v. Fare Foods Corp.*, 911 F.3d. 874 (7th Cir. 2018), the Seventh Circuit, citing *Hostetler v. Quality Dining, Inc*., 218 F.3d 798, 808 (7th Cir. 2000), explained when a few isolated incidents may constitute a hostile work environment: "Cumulatively or in conjunction with other harassment, such acts might become sufficiently pervasive to support a hostile work environment claim, but if few and far between they typically will not be severe enough to be actionable in and of themselves." *Swyear,* 911 F.3d at 882 (use of nicknames, discussion of romantic relationships and unwelcome sexual advance at a hotel by a co-worker did not constitute hostile work environment); see also *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 646 (7th Cir. 2005) ("Relatively isolated instances of non-severe misconduct will not support a claim of hostile environment").

Plaintiff cites *Roberts v. Clark Cnty Sch. Dist.,* 215 F. Supp. 3d 1001 (D. Nev., October

4, 2016) to support his contention that he has plead a hostile work environment. However, the conduct alleged in *Roberts* was much more severe than what Plaintiff alleges here. In *Roberts*, when the plaintiff informed his employer he would be transitioning from female to male, the employer banned him from using both the men's and women's bathrooms, sent out multiple emails to the entire department notifying all employees about plaintiff's transition, without plaintiff's permission, and refused to update plaintiff's name and gender without formal documentation. *Id*., at 1005-1007. At most, here Plaintiff alleges that his co-workers made a few comments to him, his supervisor disclosed Plaintiff's transgender status to a few coworkers, not the entire department, and on one occasion, he was questioned about using the male bathroom. (Second Amended Complaint, Count IV, ¶11) Even if the treatment that Complainant alleges is true, it would not be sufficient to constitute a hostile work environment.

**VII.     Plaintiff has not plead an adverse employment action.**

Counts V, VI and VII of Plaintiff's Second Amended Complaint must be dismissed because Plaintiff has failed to plead an adverse employment action. In his response, Plaintiff first asserts that in Count V, alleging segregation, he does not need to allege an adverse employment action. (Pl. Response at 13) While courts have held that a lack of an adverse employment action will not defeat a segregation claim, a plaintiff still must show that the segregation by protected status has a tendency to deprive a person of employment opportunities. *United States EEOC v. AutoZone, Inc*. 860 F.3d 564, 569 (7th Cir. 2017). Here Plaintiff's allegations do not meet this standard because he does not plead that he was deprived of any employment opportunities. In *Autozone, Inc.*, the court determined that the plaintiff's transfer was purely lateral because it entailed no reduction in pay, benefits or job responsibilities. *Id*. at 568. The segregation alleged by Plaintiff here did not include any reduction in pay, benefits or any change in job responsibilities.

Plaintiff makes only vague allegations that that working in Division VI is more preferable because it involves a smaller population and may improve his resume, but he does not claim that it would materially affect his pay, benefits or job responsibilities. (Second Amended Complaint, ¶10, 11)

Finally, Plaintiff's argument that he suffered an adverse employment action when Defendant denied his request for paid leave is without merit. Plaintiff's alleged loss of pay resulted only from Plaintiff's own decision not to report to work. Plaintiff does not allege that he has been demoted, disciplined, suspended or terminated. Plaintiff has failed to adequately plead discrimination and retaliation under the IHRA, and therefore, Counts V, VI and VII should be dismissed.

## CONCLUSION

WHEREFORE, for the reasons herein and the reasons in their motion to dismiss, Defendants Cook County and Melvin Judkins respectfully request that this Honorable Court grant their motion to dismiss Plaintiff's claims with prejudice and grant any other relief it deems necessary and just.

        Respectfully submitted,

        KIMBERLY M. FOXX
        State's Attorney of Cook County

By:   */s/ Colleen Harvey*
        Colleen Harvey
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-6665
        colleen.harvey@cookcountyil.gov