## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LOGAN M. GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | 19-cv-06091 |
| | ) | |
| -vs- | ) | |
| | ) | |
| COUNTY OF COOK, an Illinois county, d/b/a | ) | |
| COOK COUNTY HEALTH & HOSPITALS | ) | Judge Gary S. Feinerman |
| SYSTEM and/or CERMAK HEALTH SERVICES; | ) | Magistrate Judge Jeffrey T. |
| and MELVIN JUDKINS, in his individual capacity; | ) | Gilbert |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
### SECOND AMENDED COMPLAINT

Now come Defendants, COUNTY OF COOK ("Defendant Cook County") and MELVIN

JUDKINS ("Defendant Judkins"), by their attorney KIMBERLY M. FOXX, State's Attorney of

Cook County, through her Assistant State's Attorney, Colleen Harvey and answer Plaintiff's

Second Amended Complaint as follows:

### SECOND AMENDED COMPLAINT

**(42 U.S.C. §1983 (violation of substantive Due Process—disclosure of confidential
information), invasion of privacy (public disclosure of private facts), intentional infliction
of emotional distress, and violations of the Illinois Human Rights Act)**

### COUNT I
**(42 U.S.C. §1983—Substantive Due Process— Disclosure of confidential information—
against Defendant MELVIN JUDKINS, in his individual capacity, and the COUNTY OF
COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM
and/or CERMAK HEALTH SERVICES (the County named solely for purposes of
indemnification))county named solely for purposes of indemnification))**

1. Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of

Cook, State of Illinois.

1

**Answer: Defendant Judkins[1] lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2.      In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer:  Defendant Judkins admits the allegations in Paragraph 2.**

3.      Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Defendant MELVIN JUDKINS, has been the Plaintiff's immediate supervisor. Defendant MELVIN JUDKINS is, like the Plaintiff, an employee of Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer:  Defendant Judkins admits the allegations in Paragraph 3.**

4.      The Plaintiff is a transgender person. As defined by Merriam- Webster, transgender means "of, relating to, or being a person whose gender identity differs from the sex the person had or was identified as having at birth." https://www.merriam-webster./dictionar/transgender The Plaintiff's designated sex at birth was female. In and around 2000, when he was 37 years old, the Plaintiff was diagnosed with a medical condition then known as gender identity disorder (DSM-IV), now known as gender dysphoria (DSM-V). In order to treat his gender dysphoria, the Plaintiff underwent a series of medical interventions. Those medical interventions included hormone therapy (treatment with testosterone), as well as

---

[1] Counts I, II and III are brought against Defendant Cook County only as indemnitor.  On that basis, only Defendant Judkins answers the allegations in Counts I, II and III.

chest reconstructive surgery and genital surgeries, now known as gender confirmation surgeries. The Plaintiff's surgeries set forth above were completed by 2006. The Plaintiff is still having hormone therapy (testosterone).

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 4, and denies the same.**

5.      As a result of the medical procedures outlined above, before 2008 the Plaintiff had male pattern baldness, a low (male) voice, a full beard, and a male build. Since before 2008, the Plaintiff has presented as unambiguously male. As of 2008 and thereafter, to disclose to a third party that the Plaintiff was transgender would be tantamount, in the Plaintiff's case, to disclosing that the Plaintiff had had a significant medical condition and significant medical interventions because (1) no one could look or sound like the Plaintiff whose designated sex at birth was female without significant medical interventions, (2) the combination of surgeries which the Plaintiff had were available only to persons diagnosed with gender identity disorder, now known as gender dysphoria, and (3) a person does not transition from one sex to the other unless they suffer from gender dysphoria, formerly known as gender identity disorder.

**Answer: Defendant Judkins denies that disclosure to a third party that Plaintiff was transgender would be tantamount to disclosing that Plaintiff had a significant medical condition and significant medical interventions.   Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 5, and denies the same.**

6.      In and around 2003, the Plaintiff became recognized medically as male and became legally male under law.

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 6, and denies the same.**

7.     Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status. The fact that the Plaintiff is transgender is confidential medical information in his case.

**Answer:  Defendant Judkins denies that Plaintiff sought to keep his transgender status private, denies that he outed Plaintiff as transgender at work and denies that the fact that Plaintiff is transgender is confidential medical information.  Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 7, and denies the same.**

8.     Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff was living in stealth and did not disclose his transgender status publicly.

**Answer: Defendant Judkins denies that he outed Plaintiff as transgender at work and denies that Plaintiff did not disclose his transgender status publicly.  Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 8, and denies the same.**

9.     From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by

correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Judkins admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 9, and denies the same.**

10.     In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Judkins admits that attached hereto as Exhibit A is what appears to be an article from the Windy City Times from May 22, 2013.  Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 10, and denies the same.**

11.     There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

**Answer: Defendant Judkins denies the allegations in Paragraph 11.**

12.     In August of 2018, while the Plaintiff was at work, a nurse and co-worker of the Plaintiff, whose last name is Bradford, told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed."

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 12, and denies the same.**

13.     On or about September 28, 2018, Defendant MELVIN JUDKINS, while at work at the Cook County jail discussing an applicant for employment at the Cook County jail, and acting under color of law, told co-workers of the Plaintiff that the Plaintiff is transgender and told the Plaintiff's co-workers that the Plaintiff's transgender status was the reason the Plaintiff was no longer assigned to Division Six, the division housing transgender detainees. In making those disclosures, Defendant MELVIN JUDKINS was disclosing to the Plaintiff's co-workers confidential medical information relating to the Plaintiff. In making said disclosures, Defendant MELVIN JUDKINS was acting maliciously and with reckless disregard to the Plaintiff's safety and rights.

**Answer: Defendant Judkins denies the allegations in Paragraph 13.**

14.     The Plaintiff has a fundamental liberty interest in keeping his transgender status and his confidential medical information private, including, but not limited to, the fact that he once suffered from gender dysphoria, and that he has undergone medical procedures which enable him to present unambiguously as a male. There was no significant governmental interest in the disclosure of the Plaintiff's transgender status and confidential medical information to the Plaintiff's co-workers, and the disclosure of said information by Defendant MELVIN JUDKINS under color of law violated the Plaintiff's substantive Due Process rights under the Constitution of the United States.

**Answer: Paragraph 14 states conclusions of law, to which no answer is required.  To the extent an answer is required, Defendant Judkins denies the allegations in Paragraph 14.**

15.     On or about September 30, 2018, two co-workers of the Plaintiff, Katie Healy and Kirsten Bain, who were present when Defendant MELVIN JUDKINS outed the Plaintiff as set forth above, told the Plaintiff that Defendant MELVIN JUDKINS had disclosed the Plaintiff's transgender status to the Plaintiff's co-workers. Bain told the Plaintiff that she was informing him of Defendant MELVIN JUDKINS' conduct in outing the Plaintiff because she was afraid for the Plaintiff's physical safety going forward.

**Answer:  Defendant Judkins denies that he outed Plaintiff as transgender at work. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 15, and denies the same.**

16.     The disclosure of the Plaintiff's confidential medical information and transgender status to his co-workers at the Cook County jail created a significant likelihood of physical violence being perpetrated against the Plaintiff.

**Answer: Defendant Judkins denies the allegations in Paragraph 16.**

17.     As a proximate result of the disclosure to the Plaintiff's co-workers of his confidential medical information and transgender status by Defendant MELVIN JUDKINS, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, thereby losing income he would otherwise have earned, as well as an opportunity to earn retirement benefits. In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his confidential medical information and transgender status by Defendant MELVIN JUDKINS, the Plaintiff has lost friends and acquaintances. In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his  confidential medical information and transgender status by Defendant MELVIN JUDKINS,

the Plaintiff has experienced severe mental and emotional pain and suffering as well as sleepless nights and hypertension and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

**Answer: Defendant Judkins denies the allegations in Paragraph 17.**

18.     Defendant MELVIN JUDKINS was acting in the scope of his employment by Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, in telling the Plaintiff's co-workers that the Plaintiff is transgender and that was the reason why the Plaintiff was no longer assigned to Division Six, the division housing transgender detainees. Accordingly, Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, has a duty under §9-102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9-102) to indemnify Defendant MELVIN JUDKINS for any judgment for compensatory damages entered against him in this case.

**Answer: Paragraph 18 states conclusions of law to which no answer is required. To the extent an answer is required, Defendant Judkins denies the allegations in Paragraph 18.**

WHEREFORE, for the above and above and foregoing reasons, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)     Awarding the Plaintiff, LOGAN M. GRIMES, compensatory damages in an amount to be determined by the jury; said amount to be in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(b)     Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS, punitive damages in an amount to be determined by the jury;

(c)     Awarding the Plaintiff LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(d)     Awarding the Plaintiff, LOGAN M. GRIMES, his litigation costs; and

(e)     Granting the Plaintiff, LOGAN M. GRIMES, such other and further relief as the nature of the case may permit.

**Answer:  Defendant Judkins denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

## COUNT II

**(Invasion of privacy under Illinois law—public disclosure of private facts—against Defendant MELVIN JUDKINS, in his individual capacity)**

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant MELVIN JUDKINS, in his individual capacity, alleges and states as follows:

1.     The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2.     In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been the County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

**Answer: Defendant Judkins admits the allegations in Paragraph 2.**

3.     Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Defendant MELVIN JUDKINS has been his immediate supervisor. Defendant MELVIN JUDKINS is, like the Plaintiff, an employee of the

County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

**Answer: Defendant Judkins admits the allegations in Paragraph 3.**

4.    The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 4, and denies the same.**

5.    Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status, and the fact that the Plaintiff is transgender was a private fact which the Plaintiff did not disclose publicly.

**Answer: Defendant Judkins denies that Plaintiff sought to keep his transgender status private, denies that he outed Plaintiff as transgender at work and denies that the fact that Plaintiff is transgender was a private fact which Plaintiff did not disclose publicly. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 5, and denies the same.**

6.    Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff

was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff was living in stealth.

**Answer: Defendant Judkins denies that he outed Plaintiff as transgender at work and denies that Plaintiff sought to keep his transgender status private. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 6, and denies the same.**

7.     From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Judkins admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 7, and denies the same.**

8.     In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Judkins admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013.**

**Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 8, and denies the same.**

9.      There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

**Answer: Defendant Judkins denies the allegations in Paragraph 9.**

10.      In August of 2018, while the Plaintiff was at work, a nurse and co-worker of the Plaintiff, whose last name is Bradford, told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed."

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 10, and denies the same.**

11.      On or about September 28, 2018, Defendant MELVIN JUDKINS, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is transgender, thereby giving publicity to said private fact to the Plaintiff's co-workers. In disclosing the Plaintiff's transgender status to the Plaintiff's co-workers, Defendant MELVIN JUDKINS was acting maliciously and with reckless disregard of the Plaintiff's safety and rights.

**Answer: Paragraph 11 states legal conclusions to which no answer is required.  To the extent an answer is required, Defendant Judkins denies the allegations in Paragraph 11.**

12.      In outing the Plaintiff as transgender to the Plaintiff's co-workers as set forth above, Defendant MELVIN JUDKINS was not motivated or actuated by a purpose to serve his employer, and was not acting within the scope of his employment.

**Answer:  Defendant Judkins denies the allegations in Paragraph 12.**

13.     Whether to disclose one's transgender status is a very private decision, involving, depending on where a person works and lives, potential violence and discrimination. It would be highly offensive to a reasonable person to make public a person's transgender status without his permission.

**Answer: Paragraph 13 states a legal conclusion to which no answer is required.  To the extent an answer is required, Defendant Judkins denies the allegations in Paragraph 13.**

14.     The Plaintiff's transgender status was not a matter of legitimate concern to the Plaintiff's co-workers at the Cook County jail or to the public.

**Answer: Paragraph 14 states a legal conclusion to which no answer is required.  To the extent an answer is required, Defendant Judkins denies the allegations in Paragraph 14.**

15.     As a proximate result of the disclosure to the Plaintiff's co-workers of the Plaintiff's transgender status by Defendant MELVIN JUDKINS, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, thereby losing income he would otherwise have earned, as well as an opportunity to earn retirement benefits. In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his transgender status by Defendant MELVIN JUDKINS, the Plaintiff has lost friends and acquaintances and has experienced and is continuing to experience mental and emotional pain and suffering. In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of his transgender status by Defendant MELVIN JUDKINS, the Plaintiff

has experienced sleepless nights as well as hypertension and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

**Answer: Defendant Judkins denies the allegations in Paragraph 15.**

WHEREFORE, for the above and above and foregoing reasons, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)    Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS compensatory damages in an amount to be determined by the jury; said amount to be in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(b)    Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS, punitive damages in an amount to be determined by the jury;

(c)    Awarding the Plaintiff, LOGAN M. GRIMES, his litigation costs; and

(d)    Granting the Plaintiff, LOGAN M. GRIMES, such other and further relief as the nature of the case may permit.

**Answer: Defendant Judkins denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

## COUNT III
**(Intentional infliction of emotional distress under Illinois law—against Defendant MELVIN JUDKINS, in his individual capacity)**

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant MELVIN JUDKINS, in his individual capacity, alleges and states as follows:

1.    The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

14

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2.      In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been the County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

**Answer: Defendant Judkins admits the allegations in Paragraph 2.**

3.      Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Defendant MELVIN JUDKINS has been his immediate supervisor. Defendant MELVIN JUDKINS is, like the Plaintiff, an employee of the County of Cook, an Illinois county, d/b/a Cook County Health & Hospitals System and/or Cermak Health Services.

**Answer: Defendant Judkins admits the allegations in Paragraph 3.**

4.      The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 4, and denies the same.**

5.      Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only

close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status.

**Answer: Defendant Judkins denies that Plaintiff sought to keep his transgender status private, denies that he outed Plaintiff as transgender at work. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 5, and denies the same.**

6.      Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff was outed at work by Defendant MELVIN JUDKINS as set forth hereinafter, the Plaintiff was living in stealth, and the fact that the Plaintiff is transgender was a private fact which the Plaintiff did not disclose publicly.

**Answer: Defendant Judkins denies that he outed Plaintiff as transgender at work, denies that Plaintiff sought to keep his transgender status private and denies that the fact that Plaintiff is transgender was a private fact which Plaintiff did not disclose publicly. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 6, and denies the same.**

7.      From and after the commencement of his employment as a Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Judkins admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 7, and denies the same.**

8.      In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender.  See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Judkins admits that attached hereto as Exhibit A is what appears to be an article from the Windy City Times from May 22, 2013.  Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 8, and denies the same.**

9.      There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

**Answer: Defendant Judkins denies the allegations in Paragraph 9.**

10.      On or about September 28, 2018, Defendant MELVIN JUDKINS, while at work at the Cook County jail discussing an applicant for employment at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is transgender.

**Answer: Defendant Judkins denies the allegations in Paragraph 10.**

11.      On or about September 30, 2018, two co-workers of the Plaintiff, Katie Healy and Kirsten Bain, who were present when Defendant MELVIN JUDKINS outed the Plaintiff as set forth above, told the Plaintiff that Defendant MELVIN JUDKINS had disclosed the Plaintiff's

transgender status to the Plaintiff's co-workers. Bain told the Plaintiff that she was informing him of Defendant MELVIN JUDKINS' conduct in outing the Plaintiff because she was afraid for the Plaintiff's physical safety going forward.

**Answer: Defendant Judkins denies that he outed Plaintiff as transgender at work. Defendant Judkins lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 11, and denies the same.**

12.     In outing the Plaintiff as transgender to the Plaintiff's co-workers as set forth above, Defendant MELVIN JUDKINS was not motivated or actuated by a purpose to serve his employer, and was not acting within the scope of his employment.

**Answer:  Defendant Judkins denies the allegations in Paragraph 12.**

13.     Whether to disclose one's transgender status is a very private decision, involving, depending on where a person works and lives, potential violence and discrimination.

**Answer: Defendant Judkins lacks sufficient knowledge to admit or deny the allegations in Paragraph 13, and denies the same.**

14.     The conduct of Defendant MELVIN JUDKINS in disclosing the Plaintiff's transgender status to the Plaintiff's co-workers was extreme and outrageous, and put the Plaintiff's life at risk.

**Answer: Paragraph 14 states a legal conclusion to which no answer is required.  To the extent an answer is required, Defendant Judkins denies the allegations in Paragraph 14.**

15.     Defendant MELVIN JUDKINS intended that his conduct in disclosing the Plaintiff's transgender status to the Plaintiff's co-workers would inflict severe emotional distress

on the Plaintiff or knew that there was a high probability that his (Defendant MELVIN JUDKINS') conduct would cause the Plaintiff severe emotional distress.

**Answer: Defendant Judkins denies the allegations in Paragraph 15.**

16.     As a proximate result of the disclosure to the Plaintiff's co-workers of the Plaintiff's transgender status by Defendant MELVIN JUDKINS, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, thereby losing income he would otherwise have earned, as well as an opportunity to earn retirement benefits. In addition, as a proximate result of the disclosure to the Plaintiff's co-workers of the Plaintiff's transgender status by Defendant MELVIN JUDKINS, the Plaintiff has lost friends and acquaintances and has experienced and is continuing to experience severe mental and emotional pain and suffering, which has resulted in sleepless nights as well as hypertension requiring hypertensive medication to reduce the Plaintiff's blood pressure, and the Plaintiff has incurred medical expenses.

**Answer: Defendant Judkins denies the allegations in Paragraph 16.**

WHEREFORE, for the above and above and foregoing reasons, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)     Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant MELVIN JUDKINS, in his individual capacity, compensatory damages in an amount to be determined by the jury; said amount to be in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(b)     Awarding the Plaintiff, LOGAN M. GRIMES, his litigation costs; and

19

(c)     Granting the Plaintiff, LOGAN M. GRIMES, such other and further relief as the nature of the case may permit.

**Answer: Defendant Judkins denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

## COUNT IV

**(Violation of the Illinois Human Rights Act—**
**Hostile and offensive work environment based on gender-related identity—against**
**Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH &**
**HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES)**

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.     The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2.     In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 2.**

3.     At all relevant times herein mentioned, the Plaintiff's performance as a Correctional Medical Technician II met his employer's reasonable expectations.

**Answer: Defendant Cook County denies the allegations in Paragraph 3.**

4.      Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Melvin Judkins has been his immediate supervisor. Melvin Judkins is, like the Plaintiff, an employee of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 4.**

5.      The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 5, and denies the same.**

6.      Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status.

**Answer: Defendant Cook County denies that Plaintiff sought to keep his transgender status private and denies that Defendant Judkins outed Plaintiff as transgender at work. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 6, and denies the same.**

7.      Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff was living in stealth, and the fact that the Plaintiff is transgender was a private fact which the Plaintiff did not disclose publicly.

**Answer: Defendant Cook County denies that Defendant Judkins outed Plaintiff as transgender at work, denies that Plaintiff sought to keep his transgender status private and denies that the fact that Plaintiff is transgender was a private fact the Plaintiff did not disclose publicly.  Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 7, and denies the same.**

8.      From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Cook County admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 8, and denies the same.**

9.      In 2013 the Cook County jail was placing some transgender detainees into protective custody because of legitimate concerns of violence perpetrated against them within the

jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Cook County admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 9, and denies the same.**

10.     There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

**Answer: Defendant Cook County denies the allegations in Paragraph 10.**

11.     Commencing in 2018, the Plaintiff began experiencing pervasive and unwelcome harassment from co-workers at the Cook County jail, all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity. At first, there was nothing about the harassment which caused the Plaintiff to realize that it was based on his perceived or actual gender-related identity. Co-workers started shunning the Plaintiff and would not communicate with him. This happened on a daily basis and continued until the Plaintiff ceased reporting to work on or about October 1, 2018, after he was outed as transgender by Melvin Judkins as set forth hereinafter. Commencing in and around May of 2018, some of the harassment appeared to relate explicitly to the Plaintiff's perceived or actual gender-related identity. For example, in the late spring or early summer of 2018, Shirley McBride, a paramedic (Emergency Response Technician) and co-worker of the Plaintiff, told the Plaintiff while laughing, "You really do have a big ass, don't you?" In the late spring or early summer, M. Brittman, a Correctional Medical Technician II, referred to the Plaintiff as "girl". And in August of 2018, a nurse whose last name

is Bradford told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed." On or about September 28, 2018, Melvin Judkins, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is, in fact, transgender. In and around October of 2018, when the Plaintiff was attending an investigation of a grievance that had been filed against Melvin Judkins for, among other things, discriminating against the Plaintiff on the basis of gender- related identity, the investigator who worked for the County of Cook acted shocked when the Plaintiff asked her where the men's bathroom was, and questioned his use of the men's bathroom.

**Answer: Defendant Cook County denies that Plaintiff experienced pervasive and unwelcome harassment at work based on Plaintiff's perceived or actual gender-related identity, denies that Defendant Judkins disclosed Plaintiff's transgender status at work and denies that Plaintiff was discriminated against on the basis of his gender-related identity. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 11, and denies the same.**

12.     This severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation.

**Answer: Defendant Cook County denies the allegations in Paragraph 12.**

13.     The purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work.

**Answer: Defendant Cook County denies the allegations in Paragraph 13.**

14.     As a proximate result of the disclosure by Melvin Judkins to the Plaintiff's co-workers of the Plaintiff's transgender status, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018, because of the hostile, and abusive work environment he experienced, thereby losing income he would otherwise have earned.

**Answer: Defendant Cook County denies the allegations in Paragraph 14.**

15.     The Plaintiff, on or about October 1, 2018, contacted his union representative, who, in turn, filed a grievance under the applicable collective bargaining agreement on the Plaintiff's behalf on or about October 16, 2018, relating to, among other things, Melvin Judkins' disclosure of the Plaintiff's transgender status to his co-workers. During the course of the investigation of said grievance, the Plaintiff informed his employer about all of the harassment described above, and requested that his employer take action to insure that such harassment would not continue should he resume reporting for work for the employer. The Plaintiff specifically requested, among other things, a policy review relating to transgender employees and holding accountable employees who harass or discriminate against transgender employees, as well as cultural competency training of employees relating to transgender issues and the need to treat transgender co-workers no differently than anyone else.

**Answer: Defendant Cook County admits that on or about October 16, 2018, Plaintiff's union filed a grievance on Plaintiff's behalf relating to Defendant Judkins' alleged disclosure of Plaintiff's transgender status to his coworkers.  Defendant Cook County lacks sufficient knowledge to admit or deny if and when Plaintiff contacted his**

union representative, and denies the same. **Defendant Cook County denies all remaining allegations in Paragraph 15.**

16.    The Plaintiff's employer has refused to take any action to end the hostile and abusive work environment experienced by the Plaintiff because he is transgender, and the Plaintiff's employer has demanded that the Plaintiff report to work before any actions have been taken by the employer to end the hostile and abusive work environment.

**Answer: Defendant Cook County denies the allegations in Paragraph 16.**

17.    The Plaintiff has lost income as a proximate result of the hostile and abusive work environment in that he has been on unexcused and unpaid leave since on or about September 28, 2018.

**Answer: Defendant Cook County denies the allegations in Paragraph 17.**

18.    As a result of said hostile and abusive work environment, the Plaintiff has experienced mental and emotional pain and suffering well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

**Answer:  Defendant Cook County denies the allegations in Paragraph 18.**

19.    On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the first count of which alleged a discriminatory hostile, intimidating, and offensive work environment. A true and correct copy of said charge is attached hereto as Exhibit B.

**Answer: Defendant Cook County admits that attached hereto as Exhibit B is what appears to be a copy of Charge 2019 CF 1090.  Defendant Cook County lacks sufficient**

knowledge to admit or deny the remaining allegations in Paragraph 19, and denies the same.

20.     On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

**Answer: Defendant Cook County admits that attached hereto as Exhibit C appears to be a copy of Plaintiff's request to the IDHR. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 20, and denies the same.**

21.     On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court. A true and correct copy of said notice is attached hereto as Exhibit D.

**Answer: Defendant Cook County admits that attached hereto as Exhibit D appears to be a copy of IDHR's Notice of Opt Out of IDHR's Investigative and Administrative Process, And Of Right To Commence An Action In Circuit Court. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 21, and denies the same.**

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a)     Ordering the Defendant, COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b)     Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c)     Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d)     Awarding the Plaintiff his litigation costs; and

(e)     Granting the Plaintiff such other and further relief as the nature of the case may permit.

**Answer: Defendant Cook County denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

### COUNT V
**(Violation of the Illinois Human Rights Act— Segregation based on gender-related identity— against Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES)**

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.     The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2.     In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 2.**

3.     Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Melvin Judkins has been his immediate supervisor. Melvin Judkins, is, like the Plaintiff, an employee of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 3.**

4.     At all relevant times herein mentioned, the Plaintiff's performance as a Correctional Medical Technician II met his employer's reasonable expectations.

**Answer: Defendant Cook County denies the allegations in Paragraph 4.**

5.     The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

29

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 5, and denies the same.**

6. In 2013, within the Cook County jail, a tier was opened in Division 6 for protective custody of transgender detainees.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 6, and denies the same.**

7. Commencing in and around the last quarter of 2017 and continuing thereafter, the Plaintiff was never assigned to Division 6 of the Cook County jail.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 7, and denies the same.**

8. Melvin Judkins, the Plaintiff's immediate supervisor, has stated that the reason that the Plaintiff has not been assigned to Division 6 is because the Plaintiff is transgender.

**Answer: Defendant Cook County denies the allegations in Paragraph 8.**

9. This action of not assigning the Plaintiff to work in Division 6 constitutes segregation of the Plaintiff by his employer on the basis of his gender-related identity.

**Answer: Defendant Cook County denies the allegations in Paragraph 9.**

10. Working in Division 6 is a desirable assignment because Division 6 is a minimum security section of the jail with a smaller population.

**Answer: Defendant Cook County denies the allegations in Paragraph 10.**

11. This segregation tended to deprive the Plaintiff of a job opportunity, i.e., the experience of working as a correctional medical technician in a minimum security section of a jail which housed exclusively transgender detainees, something that could be positive on the Plaintiff's resume going forward.

**Answer: Defendant Cook County denies the allegations in Paragraph 11.**

12.     As a proximate result of being segregated by his employer on the on the basis of his gender-related identity, the Plaintiff has experienced mental and emotional pain and suffering as well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

**Answer: Defendant Cook County denies the allegations in Paragraph 12.**

13.     On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the second count of which alleged that the Plaintiff was not assigned to certain areas of the Cook County jail because of his gender-related identity. A true and correct copy of said charge is attached hereto as Exhibit B.

**Answer: Defendant Cook County admits that attached hereto as Exhibit B is what appears to be a copy of Charge 2019 CF 1090.  Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 13, and denies the same.**

14.     On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

**Answer: Defendant Cook County admits that attached hereto as Exhibit C is what appears to be a copy of Plaintiff's request to IDHR.  Defendant Cook County lacks**

sufficient knowledge to admit or deny the remaining allegations in Paragraph 14, and denies the same.

15. On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court. A true and correct copy of said notice is attached hereto as Exhibit D.

**Answer: Defendant Cook County admits that attached hereto as Exhibit D is what appears to be a copy of IDHR's Notice of Opt Out of IDHR's Investigative and Administrative Process, And Of Right To Commence An Action In Circuit Court. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 15, and denies the same.**

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a) Ordering Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b) Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c) Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d) Awarding the Plaintiff his litigation costs; and

(e) Granting the Plaintiff such other and further relief as the nature of the case may permit.

**Answer: Defendant Cook County denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

### COUNT VI
**(Violation of the Illinois Human Rights Act— Discrimination based on gender-related identity— refusing to put the Plaintiff on paid leave of absence— against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES)**

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1. The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2. In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 2.**

3. At all relevant times herein mentioned, the Plaintiff's performance as a Correctional Medical Technician II met his employer's reasonable expectations.

**Answer: Defendant Cook County denies the allegations in Paragraph 3.**

4.     Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Melvin Judkins has been his immediate supervisor. Melvin Judkins is, like the Plaintiff, an employee of Defendant COUNTY OF COOK, d/b/a/ COOK COUNTY HEALTH & HOSPITAL SYSTEMS and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 4.**

5.     The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

**Answer:  Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 5, and denies the same.**

6.     Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status.

**Answer: Defendant Cook County denies that Plaintiff sought to keep his transgender status private and denies that Defendant Judkins outed Plaintiff as transgender at work.  Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 6, and denies the same.**

7.     Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff was living in stealth.

**Answer: Defendant Cook County denies that Defendant Judkins outed Plaintiff as transgender at work and denies that Plaintiff sought to keep his transgender status private. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 7, and denies the same.**

8.     From and after the commencement of his employment as a Correctional Medical Technician II at the Cook County jail, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Cook County admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 8, and denies the same.**

9.     In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Cook County admits that attached hereto as Exhibit A is what appears to be a copy of an article from the Windy City Times from May 22, 2013.**

**Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 9, and denies the same.**

10.     There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

**Answer: Defendant Cook County denies the allegations in Paragraph 10.**

11.     Commencing in 2018, the Plaintiff began experiencing pervasive and unwelcome harassment from co-workers at the Cook County jail, all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity. At first, there was nothing about the harassment which caused the Plaintiff to realize that it was based on his perceived or actual gender-related identity. Co-workers started shunning the Plaintiff and would not communicate with him. This happened on a daily basis and continued until the Plaintiff ceased reporting to work on or about October 1, 2018, after he was outed as transgender by Melvin Judkins. Commencing in and around May of 2018, some of the harassment appeared to relate explicitly to the Plaintiff's perceived or actual gender-related identity. For example, in the late spring or early summer of 2018, Shirley McBride, a paramedic (Emergency Response Technician) and co-worker of the Plaintiff, told the Plaintiff while laughing, "You really do have a big ass, don't you?" In the late spring or early summer, M. Brittman, a Correctional Medical Technician II, referred to the Plaintiff as "girl". And in August of 2018, a nurse whose last name is Bradford told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed." On or about September 28, 2018, Melvin Judkins,  while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is, in fact, transgender. In and around October of

2018, when the Plaintiff was attending an investigation of a grievance that had been filed against Melvin Judkins for, among other things, discriminating against him on the basis of gender-related identity, the investigator who worked for the County of Cook acted shocked when the Plaintiff asked her where the men's bathroom was, and questioned his use of the men's bathroom.

**Answer: Defendant Cook County denies that Plaintiff experienced pervasive and unwelcome harassment at work based on Plaintiff's perceived or actual gender-related identity, denies that Defendant Judkins disclosed Plaintiff's transgender status at work and denies that Plaintiff was discriminated against on the basis of his gender-related identity. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 11, and denies the same.**

12.     This severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation.

**Answer: Defendant Cook County denies the allegations in Paragraph 12.**

13.     The purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work.

**Answer: Defendant Cook County denies the allegations in Paragraph 13.**

14.     As a proximate result of the disclosure by Melvin Judkins to the Plaintiff's co-workers of his transgender status, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018.

**Answer: Defendant Cook County denies the allegations in Paragraph 14.**

15.     The Plaintiff, on or about October 1, 2018, contacted his union representative, who, in turn, filed a grievance under the applicable collective bargaining agreement on the Plaintiff's behalf on or about October 16, 2018, relating to, among other things, Melvin Judkin's disclosure of the Plaintiff's transgender status to his co-workers, and discrimination against the Plaintiff based on his gender-related identity. The grievance sought, among other things, training of employees regarding transgender issues in the workplace.

**Answer: Defendant Cook County admits that on or about October 16, 2018, Plaintiff's union filed a grievance under the applicable collective bargaining agreement on Plaintiff's behalf relating Defendant Judkins' alleged disclosure of the Plaintiff's transgender status to his coworkers and alleged discrimination against Plaintiff based on his gender-related identity.  Defendant Cook County lacks sufficient knowledge to admit or deny if and when Plaintiff contacted his union representative, and denies the same. Defendant Cook County denies all remaining allegations in Paragraph 15.**

16.     During the course of the investigation of said grievance, the Plaintiff informed his employer about all of the harassment described above, and requested that his employer take action to insure that such harassment would not continue should he resume reporting for work for the employer. The Plaintiff specifically requested, among other things, a policy review relating to transgender employees and holding accountable employees who harass or discriminate against transgender employees, as well as cultural competency training of employees relating to transgender issues and the need to treat transgender co-workers no differently than anyone else.

**Answer: Defendant Cook County denies the allegations in Paragraph 16.**

17. On or about October 23, 2018, the Plaintiff went to the office of Feroze Khan, the Leave Administration Manager for the Plaintiff's employer, and orally requested that he (the Plaintiff) be placed on a paid leave of absence until after the investigation and hearing on his union grievance.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 17, and denies the same.**

18. On or about November 16, 2018, Feroze Khan sent a letter to the Plaintiff denying his request for paid leave of absence.

**Answer: Defendant Cook County admits the allegations in Paragraph 18.**

19. On information and belief, cis-gender employees similarly situated to the Plaintiff in that they had legitimate and reasonable fears for their physical safety at work have been given paid leaves of absence until the physical safety issues had been resolved.

**Answer: Defendant Cook County denies the allegations in Paragraph 19.**

20. The Plaintiff was denied a paid leave of absence by his employer because of the Plaintiff's gender-related identity.

**Answer: Defendant Cook County denies the allegations in Paragraph 20.**

21. To this date, the Plaintiff's employer has refused to take any action to end the hostile and abusive work environment experienced by the Plaintiff because he is transgender, and the Plaintiff's employer has demanded that the Plaintiff report to work before any actions have been taken by the employer to end the hostile and abusive work environment.

**Answer: Defendant Cook County denies the allegations in Paragraph 21.**

22. The Plaintiff has lost income as a proximate result of the discriminatory denial of his request for paid leave of absence.

**Answer: Defendant Cook County denies the allegations in Paragraph 22.**

23. As a proximate result of the discriminatory denial of the Plaintiff's request for paid leave of absence, the Plaintiff has experienced mental and emotional pain and suffering, as well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

**Answer: Defendant Cook County denies the allegations in Paragraph 23.**

24. On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the third count of which alleged discrimination based on gender-related identity in the denial of a paid leave of absence. A true and correct copy of said charge is attached hereto as Exhibit B.

**Answer: Defendant Cook County admits that attached hereto as Exhibit B is what appears to be a copy of Charge 2019 CF 1090. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 24, and denies the same.**

25. On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

**Answer: Defendant Cook County admits that attached hereto as Exhibit C is what appears to be a copy of Plaintiff's request to the IDHR. Defendant Cook County lacks**

40

sufficient knowledge to admit or deny the remaining allegations in Paragraph 25, and denies the same.

26. On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court. A true and correct copy of said notice is attached hereto as Exhibit D.

**Answer: Defendant Cook County admits that attached hereto as Exhibit D appears to be a copy of IDHR's Notice of Opt Out of IDHR's Investigative and Administrative Process, And Of Right To Commence An Action In Circuit Court. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 26, and denies the same.**

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a) Ordering Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b) Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c) Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d) Awarding the Plaintiff his litigation costs; and

(e)     Granting the Plaintiff such other and further relief as the nature of the case may permit.

**Answer: Defendant Cook County denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

## COUNT VII

**(Violation of the Illinois Human Rights Act—Retaliation for opposing discrimination based on gender-related identity—denial of paid leave ofabsence—against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES)**

NOW COMES the Plaintiff, LOGAN M. GRIMES, by and through his attorney, JOANIE RAE WIMMER, and, complaining of Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, alleges and states as follows:

1.     The Plaintiff, LOGAN M. GRIMES, is an individual who resides in the County of Cook, State of Illinois.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 1, and denies the same.**

2.     In February of 2013, the Plaintiff, LOGAN M. GRIMES, began working as a Correctional Medical Technician II in the Cook County jail. Since commencing that employment, the Plaintiff's employer has been Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 2.**

3.     At all relevant times herein mentioned, the Plaintiff's performance as a Correctional Medical Technician II met his employer's reasonable expectations.

**Answer: Defendant Cook County denies the allegations in Paragraph 3.**

4.      Since the Plaintiff commenced working at the Cook County jail in February of 2013 as a Correctional Medical Technician II, Melvin Judkins has been his immediate supervisor. Melvin Judkins is, like the Plaintiff, an employee of Defendant COUNTY OF COOK, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES.

**Answer: Defendant Cook County admits the allegations in Paragraph 4.**

5.      The Plaintiff is a transgender person, meaning that his designated sex at birth was female, but that, commencing in and around 2003, he began his transition to male. Said transition requires and involves medical interventions, including, but not limited to, hormone therapy. The Plaintiff has presented as a male person since 2003. In and around 2003, the Plaintiff became legally male under law.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 5, and denies the same.**

6.      Commencing in and around 2008, the Plaintiff sought to keep his transgender status private; since then and until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff chose to disclose his transgender status to only close friends, not to neighbors, casual acquaintances, or co-workers. From and after 2008, when applying for employment, the Plaintiff did not disclose his transgender status.

**Answer: Defendant Cook County denies that Plaintiff sought to keep his transgender status private and denies that Defendant Judkins outed Plaintiff as transgender at work. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 6, and denies the same.**

7.     Within the transgender community, the term "living in stealth" is used to refer to people who are not out to the public about their transgender status. From 2008 until the Plaintiff was outed at work by Melvin Judkins as set forth hereinafter, the Plaintiff was living in stealth.

**Answer: Defendant Cook County denies that Defendant Judkins outed Plaintiff as transgender at work and denies that Plaintiff sought to keep his transgender status private. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 7, and denies the same.**

8.     From and after the commencement of his employment, the Plaintiff witnessed verbal harassment and degradation of transgender detainees by correctional officers and medical staff on at least five occasions. In addition, the Plaintiff is aware of incidents of physical violence toward transgender detainees by correctional officers at the Cook County jail. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Cook County admits that attached hereto as Exhibit A is a copy of what appears to be an article from the Windy City Times from May 22, 2013.  Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 8, and denies the same.**

9.     In 2013 the Cook County jail was placing some transgender detainees in protective custody because of legitimate concerns of violence perpetrated against them within the jail because they were transgender. See article from the Windy City Times from May 22, 2013, attached hereto as Exhibit A.

**Answer: Defendant Cook County admits that attached hereto as Exhibit A is a copy of what appears to be an article from the Windy City Times from May 22, 2013.  Defendant**

**Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 9, and denies the same.**

10.    There is, and has been for the entire time the Plaintiff has worked at the Cook County jail, a culture among the employees at the Cook County jail which is infused with transphobia and hatred of transgender people.

**Answer: Defendant Cook County denies the allegations in Paragraph 10.**

11.    Commencing in 2018, the Plaintiff began experiencing pervasive unwelcome harassment from co-workers at the Cook County jail, all of which was, in fact, based upon the Plaintiff's perceived or actual gender-related identity. At first, there was nothing about the harassment which caused the Plaintiff to realize that it was based on his perceived or actual gender-related identity. Co-workers started shunning the Plaintiff and would not communicate with him. This happened on a daily basis and continued until the Plaintiff ceased reporting to work on or about October 1, 2018, after he was outed as transgender by Melvin Judkins. Commencing in and around May of 2018, some of the harassment appeared to relate explicitly to the Plaintiff's perceived or actual gender-related identity. For example, in the late spring or early summer of 2018, Shirley McBride, a paramedic (Emergency Response Technician) and co-worker of the Plaintiff, told the Plaintiff while laughing, "You really do have a big ass, don't you?" In the late spring or early summer, M. Brittman, a Correctional Medical Technician II, referred to the Plaintiff as "girl". And in August of 2018, a nurse whose last name is Bradford told the Plaintiff, referring to an unidentified individual who appeared to be female, "You see that. That's a man. People ought to tell who they really are. That's how people get killed." On or about September 28, 2018, Melvin Judkins, while at work at the Cook County jail, disclosed to co-workers of the Plaintiff that the Plaintiff is, in fact, transgender. In and around October of

2018, when the Plaintiff was attending an investigation of a grievance that had been filed against Melvin Judkins for, among other things, discriminating against the Plaintiff on the basis of gender-related identity, the investigator who worked for the County of Cook acted shocked when the Plaintiff asked her where the men's bathroom was, and questioned his use of the men's bathroom.

**Answer: Defendant Cook County denies that Plaintiff experienced pervasive and unwelcome harassment at work based on Plaintiff's perceived or actual gender-related identity, denies that Defendant Judkins disclosed Plaintiff's transgender status at work and denies that Plaintiff was discriminated against on the basis of his gender-related identity. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 11, and denies the same.**

12.     This severe and pervasive harassment altered the conditions of the Plaintiff's work environment by creating a hostile and abusive situation.

**Answer: Defendant Cook County denies the allegations in Paragraph 12.**

13.     The purpose and effect of the pervasive harassment of the Plaintiff recounted above was to substantially interfere with the Plaintiff's work performance by creating so much stress on the part of the Plaintiff that he was unable to do his work as well as he would otherwise have been able to do his work.

**Answer: Defendant Cook County denies the allegations in Paragraph 13.**

14.     As a proximate result of the disclosure by Melvin Judkins to the Plaintiff's co-workers of his transgender status, the Plaintiff reasonably fears for his safety and his family's safety should he continue to report for work at the Cook County jail, and the Plaintiff has been on an unexcused and unpaid leave of absence since on or about September 28, 2018.

**Answer: Defendant Cook County denies the allegations in Paragraph 14.**

15.     The Plaintiff, on or about October 1, 2018, contacted his union representative, who, in turn, filed a grievance under the applicable collective bargaining agreement on the Plaintiff's behalf on or about October 16, 2018, relating to, among other things, Melvin Judkin's disclosure of the Plaintiff's transgender status to his co-workers, and discrimination against the Plaintiff based on his gender-related identity. The grievance sought, among other things, training of employees regarding transgender issues in the workplace.

**Answer: Defendant Cook County admits that on or about October 16, 2018, Plaintiff's union filed a grievance under the applicable collective bargaining agreement on Plaintiff's behalf relating Defendant Judkins' alleged disclosure of the Plaintiff's transgender status to his coworkers and alleged discrimination against Plaintiff based on his gender-related identity. Defendant Cook County lacks sufficient knowledge to admit or deny if and when Plaintiff contacted his union representative, and denies the same. Defendant Cook County denies all remaining allegations in Paragraph 15.**

16.     During the course of the investigation of said grievance, the Plaintiff informed his employer about all of the harassment described above, and requested that his employer take action to insure that such harassment would not continue should he resume reporting for work for the employer. The Plaintiff specifically requested, among other things, a policy review relating to transgender employees and holding accountable employees who harass or discriminate against transgender employees, as well as cultural competency training of employees relating to transgender issues and the need to treat transgender co-workers no differently than anyone else.

**Answer: Defendant Cook County denies the allegations in Paragraph 16.**

17.     On or about October 23, 2018, the Plaintiff went to the office of Feroze Khan, the Leave Administration Manager for the Plaintiff's employer, and orally requested that he (the Plaintiff) be placed on a paid leave of absence until after the investigation and hearing on his union grievance.

**Answer: Defendant Cook County lacks sufficient knowledge to admit or deny the allegations in Paragraph 17, and denies the same.**

18.     On or about November 16, 2018, Feroze Khan sent a letter to the Plaintiff denying his request for paid leave of absence.

**Answer: Defendant Cook County admits the allegations in Paragraph 18.**

19.     On information and belief, cis-gender employees similarly situated to the Plaintiff in that they had legitimate and reasonable fears for their physical safety at work have been given paid leaves of absence until the physical safety issues had been resolved.

**Answer: Defendant Cook County denies the allegations in Paragraph 19.**

20.     The Plaintiff was denied a paid leave of absence by his employer in retaliation for the Plaintiff's opposing that which he reasonably and in good faith believed to be unlawful discrimination against himself based on his gender-related identity.

**Answer: Defendant Cook County denies the allegations in Paragraph 20.**

21.     To this date, the Plaintiff's employer has refused to take any action to end the hostile and abusive work environment experienced by the Plaintiff because he is transgender, and the Plaintiff's employer has demanded that the Plaintiff report to work before any actions have been taken by the employer to end the hostile and abusive work environment.

**Answer: Defendant Cook County denies the allegations in Paragraph 21.**

48

22.     The Plaintiff has lost income as a proximate result of the retaliatory denial of his request for paid leave of absence.

**Answer: Defendant Cook County denies the allegations in Paragraph 22.**

23.     As a result of the retaliatory denial of his request for paid leave of absence, the Plaintiff has experienced mental and emotional pain and suffering as well as sleepless nights and hypertension, and has been placed on hypertensive medication to reduce his blood pressure, and has incurred medical expenses.

**Answer: Defendant Cook County denies the allegations in Paragraph 23.**

24.     On or about January 16, 2019, the Plaintiff filed a Charge of Discrimination (No. 2019CF1090) against his employer with the Illinois Department of Human Rights ("the Department"), the fourth count of which alleged retaliation for opposing unlawful discrimination in the form of denial of a paid leave of absence. A true and correct copy of said charge is attached hereto as Exhibit B.

**Answer: Defendant Cook County admits that attached hereto as Exhibit B is what appears to be a copy of Charge No. 2019 CF 1090.  Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 24, and denies the same.**

25.     On or about March 8, 2019, the Plaintiff sent to the Department a written request pursuant to § 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), relating to the Charge of Discrimination, seeking notice from the Director indicating that the Complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court. A true and correct copy of said request is attached hereto as Exhibit C.

**Answer: Defendant Cook County admits that attached hereto as Exhibit C is what appears to be a copy of Plaintiff's request to IDHR relating to his Charge of Discrimination. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 25, and denies the same.**

26. On or about March 21, 2019, the Department sent to the Plaintiff's attorney a Notice Of Opt Out Of IDHR's Investigative And Administrative Process, And Of Right To Commence An Action In Circuit Court. A true and correct copy of said notice is attached hereto as Exhibit D.

**Answer: Defendant Cook County admits that attached here to as Exhibit D appears to be a copy of IDHR's Notice of Opt Out of IDHR's Investigative and Administrative Process, And Of Right To Commence An Action In Circuit Court. Defendant Cook County lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 26, and denies the same.**

WHEREFORE, the Plaintiff, LOGAN M. GRIMES, prays that this Court enter a judgment:

(a) Ordering Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, to cease and desist from any violation of the Illinois Human Rights Act;

(b) Awarding the Plaintiff, LOGAN M. GRIMES, and assessing against Defendant COUNTY OF COOK, an Illinois county, d/b/a COOK COUNTY HEALTH & HOSPITALS SYSTEM and/or CERMAK HEALTH SERVICES, compensatory damages in an amount to be determined by the jury in excess of FIFTY THOUSAND DOLLARS ($50,000.00);

(c)    Awarding the Plaintiff, LOGAN M. GRIMES, his reasonable attorney's fees pursuant to 775 ILCS 5/8-111(A)(4) and 775 ILCS 5/8A-104(G);

(d)    Awarding the Plaintiff his litigation costs; and

(e)    Granting the Plaintiff such other and further relief as the nature of the case may permit.

**Answer: Defendant Cook County denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

## AFFIRMATIVE DEFENSES

NOW COME MELVIN JUDKINS and COUNTY OF COOK, by and through their attorney, KIMBERLY M. FOXX, COOK COUNTY STATE'S ATTORNEY, through her assistant, Colleen Harvey, and submit the following affirmative defenses:

1.    Plaintiff's claims of discrimination and retaliation under IHRA are barred to the extent he failed to exhaust her administrative remedies as to any claims that were not encompassed within Plaintiff's Charge of Discrimination in 2019 CF 1090.

2.    The claims are barred to the extent that Plaintiff failed to timely and properly exhaust all necessary administrative, statutory and/or jurisdictional prerequisites for the commencement of this action.

3.    At all relevant times, Defendant Cook County had policies and practices in place prohibiting discrimination.

4.    Defendant took prompt remedial actions to address Plaintiff's allegations of discrimination.

5.    Defendant Judkins' conduct was reasonable and not contrary to any established law.

6. Defendant Judkins is entitled to immunity pursuant to the Illinois Local Government and Governmental Employees Tort Immunity Act.

7. Plaintiff's claims are barred to the extent that he failed to mitigate his damages.

8. Defendant Cook County is a local public entity. Accordingly, it is immune from punitive damages awards. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

## JURY DEMAND

Defendants demand a trial by jury.

DATE: May 21, 2020      Respectfully submitted:

KIMBERLY M. FOXX
State's Attorney of Cook County

By:    /s/ Colleen Harvey
Colleen Harvey
Assistant State's Attorney
Richard J. Daley Center
50 West Washington, Suite 500
Chicago, Illinois 60602
(312) 603-6665
Colleen.harvey@cookcountyil.gov