**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| LOGAN M. GRIMES, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | Case No. 19-cv-06091 |
| COUNTY OF COOK, an Illinois ) | |
| county, d/b/a COOK COUNTY ) | Judge Gary Feinerman |
| HEALTH & HOSPITALS SYSTEM ) | |
| and/or CERMAK HEALTH SERVICES; ) | Magistrate Judge Jeffrey T. Gilbert |
| and MELVIN JUDKINS, in his ) | |
| individual capacity; ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT COOK COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Defendant County of Cook ("Defendant" or "the County"), by its attorney, Kimberly M. Foxx, Cook County State's Attorney, through her assistant, Colleen Harvey, submits this memorandum of law and states as follows:

### I. INTRODUCTION

Plaintiff, a former Correctional Medical Technician II ("CMT II") employed by Defendant at Cook County Health ("CCH"), alleges that he was subjected to a hostile work environment, given less preferable assignments and denied a paid leave of absence due to his gender related identity and in retaliation for complaining about discrimination. (SOF ¶¶2, 4, 5) Plaintiff's claims arise from one incident, in which Defendant Melvin Judkins ("Judkins") allegedly gossiped about a rumor regarding Plaintiff's transgender status. (SOF ¶5) Following the incident, Plaintiff stopped reporting to work on his own initiative and remained on an unapproved leave of absence until his resignation. (SOF ¶¶49, 71, 72)

The operative complaint in this matter alleges the following counts: (1) 42 U.S.C. §1983 ("Section 1983") substantive due process claim against Judkins; (2) invasion of privacy against Judkins; (3) intentional infliction of emotion distress against Judkins; (4) hostile work environment under the Illinois Human Rights Act ("IHRA") against the County; (5) segregation based on gender-related identity under the IHRA against the County; (6) discrimination under the IHRA against the County; and (7) retaliation under the IHRA against the County. (SOF ¶5).

The Court should grant Defendant's motion for summary judgment because the undisputed facts demonstrate that Plaintiff's allegations do not rise to the level of a hostile work environment on the basis of his gender related identity, Plaintiff did not suffer a materially adverse employment action, Plaintiff will be unable to show that similarly situated employees were treated more favorably, and Plaintiff did not present evidence showing a causal connection between the denial of his request for paid leave and his discrimination complaints.

## II. SUMMARY OF FACTS

Plaintiff, a transgender male, was employed by CCH at Cermak Health Services at the Cook County Jail from 2013 until his resignation in 2020. (SOF ¶2) As a member of the Med Team, Plaintiff was responsible for distributing medications to detainees in all divisions of the Jail. (SOF ¶12) Plaintiff claims that he has kept his transgender status private and did not disclose it to coworkers. (SOF ¶11) Plaintiff alleges that in or about May 2018, his coworkers began to treat him differently by not speaking with him and giving him strange looks. (SOF ¶30)

Plaintiff alleges that on or about September 28, 2018, Judkins disclosed Plaintiff's transgender status to three of Plaintiff's coworkers and stated to them that Plaintiff's transgender status was the reason Plaintiff was not assigned to Division 6, the division which housed transgender detainees. (SOF ¶36) Plaintiff did not witness the alleged disclosure but claims that

2

he learned about the incident from two of his coworkers. (SOF¶37) Plaintiff filed a complaint against Judkins with CCH's EEO Department, which initiated an investigation into the incident and Plaintiff's claim that Judkins discriminated against Plaintiff with regard to work assignments. (SOF ¶¶41, 42) Following an investigation, the EEO Department determined that Plaintiff was not discriminated against but that Judkins had engaged in inappropriate conduct. (SOF ¶46) CCH subsequently disciplined Judkins for the inappropriate discussion. (SOF ¶47)

Following the alleged disclosure, Plaintiff stopped reporting to work on his own initiative. (SOF ¶49) Plaintiff claims that he did not report to work because he feared for his safety at the Jail, despite the lack of a specific threat. (SOF ¶¶48, 49) Plaintiff's request for a paid leave of absence was denied, as Plaintiff's circumstances did not meet the criteria for such a leave. (SOF ¶53) To address Plaintiff's concerns about returning to work at the Jail, Human Resources offered Plaintiff the opportunity to be transferred to another location outside of the correctional setting. (SOF ¶¶52, 66) Plaintiff rejected CCH's attempts to return him to work and remained on an unpaid, unapproved leave from October 2018 until his resignation in February 2020, during which Plaintiff could have returned to work at any time. (SOF ¶¶71, 72)

### III. SUMMARY JUDGMENT STANDARD

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.,* 175 F.3d 497, 504 (7th Cir. 1999). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The moving party may discharge this burden by "'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## IV. ARGUMENT

**A.  Plaintiff cannot establish a hostile work environment.**

In analyzing employment discrimination actions brought under the IHRA, Illinois courts have adopted the framework set forth in federal court decisions addressing claims under Title VII. *Zaderaka v. Illinois Human Rights Commission*, 131 Ill. 2d 172, 178 (1989). "An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005). Summary judgment is appropriate here because, even assuming Judkins' conduct in discussing Plaintiff's transgender status was offensive, Plaintiff is unable to establish that the conduct was severe or pervasive and that there is a basis for employer liability.

**1.  Plaintiff is unable to establish that the conduct was severe or pervasive.**

"Not all workplace conduct that may be described as harassment is actionable under Title VII." *Bilal v. Rotec Indus.*, 326 Fed. Appx. 949, 956 (7th Cir. 2009). In determining whether an incident is severe or pervasive courts look to the frequency of the conduct, whether it was physically threatening and whether it unreasonably interferes with an employee's work performance. *Cook County Sheriff's Office v. Cook Cnty. Comm'n on Human Rights,* 2016 IL App (1st) 150718, *32 (1st Dist. 2016). As for his work conditions, Plaintiff remained a CMT II, and he was not disciplined, transferred, or demoted. (SOF ¶¶2, 72) Plaintiff stopped reporting to work

4

on his own initiative and could have returned at any time. (SOF ¶¶49, 72) Plaintiff will be unable to show that the alleged harassment changed his working conditions or performance.

Plaintiff's claims that he felt concerned about his safety are speculative and unsupported. Plaintiff suffered no physical harm at the workplace and there were no specific threats against Plaintiff's safety. (SOF ¶50) Plaintiff appears to believe that his coworkers knew of his gender related identity months before Judkins' alleged disclosure, and yet between then and when he stopped reporting to work in September 2018, he did not suffer any incidents of physical violence or threats. (SOF ¶¶30, 39, 50) Plaintiff offered no evidence that any of his coworkers had any specific intent to do him harm. Plaintiff will not be able to establish a hostile work environment based on his alleged concerns about his safety. *Flanagan v. Office of the Chief Judge*, 893 F.3d, 372, 375 (7th Cir. 2018) (when plaintiff remained unharmed, comments such as "[he] could hit [her] and nobody would give a fuck" are empty threats rather than a declaration of an intent to do harm); *Smith v. Ne. Ill. Univ.,* 388 F.3d 559, 568 (7th Cir. 2004).

Instead, Plaintiff complains of trivial insults and slights, which are not actionable under Title VII or the IHRA. See *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) ("personality conflicts" and "snubbing by supervisors" not actionable); *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 646 (7th Cir. 2005) ("Relatively isolated instances of non-severe misconduct will not support a claim of hostile environment.") *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (comments that employee was a "bad influence on the office" not actionable); *Young v. Ill. Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶44 (1st Dist. 2012) ("vague, ambiguous or stray remarks do not give rise to an inference of discrimination"). Plaintiff alleges that some employees stopped talking to him, gave him strange looks and "head to toe" scans. (SOF ¶¶30) Plaintiff claims that two coworkers made comments to him which referenced his gender related

identity: (1) Moishi Brittman ("Brittman") started using the wrong pronouns and called Plaintiff a girl; and (2) Shirley McBride ("McBride") told Plaintiff, in jest, "You really do have a big ass, don't you?" (SOF ¶¶30, 32) Brittman's alleged conduct consisted of a few comments over a period of a few months, and McBride's alleged conduct consisted of one comment, said in jest. (SOF ¶¶30, 32) While potentially unpleasant, a reasonable person would not find this conduct to be severe or pervasive such that it created a hostile work environment. *Young*, 2012 IL App (1st) 112204, ¶44 (referring to female plaintiff with masculine instead of feminine pronouns is not itself discriminatory). Plaintiff did not find the comments or conduct to be so offensive that he immediately reported it, as Plaintiff did not report any of this conduct until months later in October 2018. (SOF ¶35)

Nor does Judkins' alleged disclosure of Plaintiff's transgender status establish that Plaintiff was subjected to a hostile work environment. There is no evidence that Judkins harbored animus against Plaintiff due to his gender related identity. While Judkins' comments to Plaintiff's coworkers, if true, were inappropriate, the comments did not demonstrate any animus toward Plaintiff's transgender status. (SOF ¶36) Even if they did, as Plaintiff claims, this one incident does not meet the threshold for a hostile work environment, as one utterance alone does not create an objectively hostile work environment. *Smith v. Ill. Department of Transportation,* 936 F.3d 554, 561-562 (7th Cir. 2019) (plaintiff cannot establish a hostile work environment based on race with one incident in which a racial epithet was used).

Plaintiff also claims that EEO Investigator Shanee Madison ("Madison") acted surprised when Plaintiff asked her to direct him to the restroom. (SOF ¶44) Plaintiff testified that he asked Madison where the restroom was located, she asked him do you want to use the men's restroom, he answered yes and she directed him to the men's restroom by pointing down the hall. (SOF ¶44)

6

Plaintiff does not allege that Madison made any comments about what restroom he used. Plaintiff makes assumptions as to Madison's intentions and implies that, without saying anything demeaning, she somehow demonstrated animus toward his gender related identity, simply because he is a member of a protected class. *Beamon v. Marshall Illsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) ("not every perceived unfairness in the workplace may be ascribed to discriminatory motivation"). Even if the treatment that Plaintiff alleges is true, it is not enough to establish a hostile work environment, as Plaintiff's assumptions have no weight in summary judgment analysis. *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1117 (7th Cir. 2009).

### 2. Plaintiff cannot establish a hostile work environment based on allegations regarding the treatment of transgender detainees.

Nor do Plaintiff's allegations regarding the treatment of transgender detainees at the Jail establish that Plaintiff was subjected to a hostile work environment on the basis of his gender related identity. Plaintiff testified to two comments directed to transgender detainees by his coworkers: (1)"If you're born a man, you are a man."; (2) "I'm going to call you by your legal name." (SOF ¶77) Plaintiff alleges that a nurse said to Plaintiff in reference to a transgender detainee, "See that's a man, people ought to tell who they really are." (SOF ¶78) Plaintiff also claims throughout his employment at the Jail he witnessed correctional officers and medical staff use demeaning terms about transgender detainees, laugh at transgender detainees, and ignore requests for medical assistance. (SOF ¶¶74, 76)

Plaintiff appears to allege that the overall treatment of transgender detainees at the Jail contributed towards a hostile work environment for him, as a transgender employee. However, conduct that may be, in certain contexts, offensive but which is not directly related to Plaintiff does little to support a showing of a hostile work environment. *Yuknis v. First Student, Inc.*, 481 F.3d 552, 555-556 (7th Cir. 2007); *Smith*, 388 F.3d at 567. "The more remote or indirect the act claimed

7

to create a hostile working environment, the more attenuated the inference that the worker's environment was actually made unbearable[.]" *Yuknis,* 481 F.3d at 555; *See Howard v. Cook Cty. Sheriff's Office*, 989 F.3d 587, 603 (7th Cir. 2021) ("we have repeatedly rejected hostile work environment claims that rest primarily on secondhand harassment").

The comments and behavior Plaintiff points to, even if rude or offensive, are not relevant to Plaintiff personally. None of the alleged comments or conduct were directed toward Plaintiff or any transgender employee. Plaintiff never experienced any incidents of violence, and there is no evidence that Plaintiff was subjected to the type of conduct that he alleges detainees were subjected to. (SOF ¶50) Plaintiff never witnessed any incidents of physical violence against a transgender detainee. (SOF ¶79) Plaintiff claims that he witnessed mistreatment of transgender detainees throughout his employment, yet he did not report this alleged conduct to anyone. (SOF ¶75) Even if all true and viewed in the light most favorable to Plaintiff, Plaintiff's claims regarding the treatment of detainees at the Jail do not set forth a question of fact as to whether Plaintiff was subjected to a hostile work environment on the basis of his gender related identity. Plaintiff must show that *he* was exposed to discrete incidents of severe or pervasive conduct, not an environment of harassment experienced by others, in order to hold an employer liable. *EEOC v. Int'l Profit Assocs.*, 2007 U.S. Dist. LEXIS 78378, *55-56 (N.D. Ill. 2007).

### 3. There is no basis for employer liability.

*Even if* Plaintiff could establish conduct that was sufficiently offensive, and severe or pervasive for a hostile work environment (which he cannot), his claims still fail on employer liability. An employer is only liable under for a hostile work environment created by a co-worker if the employer was negligent in discovering or remedying the harassment. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 848 (7th Cir. 2008). While Illinois courts have recognized a

8

strict liability standard under the IHRA for the harassment of an employee by a supervisor, where the offending employee is a non-managerial or non-supervisory employee, the IHRA harassment standard is the same as Title VII, and "an employer is responsible for the harassment only if it was aware of the conduct and failed to take reasonable corrective measures." *Sangamon County Sheriff's Dep't. v. Illinois Human Rights Comm'n.*, 233 Ill.2d 125, 137 (2009). Here, none of the employees Plaintiff complains about were supervisors. Nurses, other CMTs, and correctional officers were Plaintiff's coworkers. (SOF ¶¶2, 30, 73) Judkins was a member of the bargaining unit and did not have the authority to hire, fire, promote, or demote Plaintiff and thus was not a supervisor. (SOF ¶14) *Andonissamy*, 547 F.3d at 848 (plaintiff's alleged harasser was not a supervisor for the purposes of Title VII because he did not hire or fire plaintiff).

Plaintiff has offered no evidence that the County was negligent in discovering or remedying the alleged harassment. The County has a policy in place which prohibits discrimination and harassment due to one's gender related identity, and provides a reporting process. (SOF ¶¶7. 8) Employees are trained on the policy and processes annually. (SOF ¶10) The County promptly conducted an investigation and disciplined Judkins for inappropriate conduct. (SOF ¶¶42, 43, 46, 47) After the EEO investigation, Human Resources met with Plaintiff about his concerns returning to work and offered Plaintiff the option of transferring to a different work location. (SOF ¶¶52, 62, 66, 68) The County cannot be liable for the conduct alleged by Plaintiff because it exercised reasonable care to prevent and correct promptly any questionable behavior. *Vance v. Ball*, 133 S. Ct. 2434, 2443 (2013). On that basis, Plaintiff cannot establish a hostile work environment.

**B.     Plaintiff has not established a segregation claim.**

Under a segregation theory, the plaintiff must show more than simply that the segregation occurred, he must at least show that the employment action adversely affected his employment

status or tended to deprive him of some job opportunity. *E.E.O.C. v. AutoZone Inc.* 860 F.3d 564, 568 (7th Cir. 2017); *E.E.O.C. v. DHL Express United States*, 2012 U.S. Dist. LEXIS 155722, *7-8 (N.D. Ill. 2012).

### 1. Plaintiff will not be able to show segregation.

In *AutoZone Inc.*, the Seventh Circuit examined a segregation claim involving a transfer of an African American salesperson from a store which predominantly served a Hispanic population in order to make it a store with predominantly Hispanic staff. *AutoZone, Inc.*, 860 F.3d at 568. Unlike *AutoZone, Inc.*, here there is no evidence that assignments were made to somehow segregate transgender employees. Division 6 was one of several assignments throughout the Jail. (SOF ¶22) Prior to mid-2018, Med Team employees were not assigned to a specific division. (SOF ¶19) The back team, which included Plaintiff, would end up with the assignments that the front team, who started earlier, did not want. (SOF ¶¶17, 19) Plaintiff complained that he had to work in the harder divisions, with more work and less security, however Katie Healy and Kirsten Bain-Norris felt the same way. (SOF ¶¶20, 21, 23) Judkins only began assigning divisions sometime in 2018 because the back team employees, including Plaintiff, complained that they always ended up in the harder divisions. (SOF ¶¶21, 22) Plaintiff was only assigned divisions by Judkins for a few months, as he stopped reporting to work in September 2018. (SOF ¶¶22, 49) Plaintiff's only evidence of segregation, Judkins' alleged comment that he did not assign Plaintiff to Division 6, does not establish that assignments were made to segregate on the basis of protected status. (SOF ¶36) There were other potential reasons for Plaintiff not being assigned to Division 6, as Judkins once commented that he had to accommodate certain employees due to medical conditions. (SOF ¶26) Judkins does not recall ever purposefully not assigning Plaintiff to Division 6. (SOF ¶29) Plaintiff will be unable to prove that segregation took place.

10

### 2. The denial of a specific assignment is not an adverse employment action and did not deprive Plaintiff of a job opportunity.

Even if the Court were to determine Plaintiff presented evidence of segregation, which he did not, Plaintiff's segregation claim still fails because there is no evidence that Judkins' failure to assign Plaintiff to Division 6 had any effect on Plaintiff's working conditions or deprived Plaintiff of a job opportunity. In *AutoZone Inc.*, the court determined that plaintiff did not establish a segregation claim because there was no evidence that a lateral transfer to a different location "even tended" to deprive plaintiff of a job opportunity. *AutoZone,Inc.* 860 F.3d at 568. Here, Plaintiff does not complain of a transfer, he only alleges that he was deprived of a specific assignment, an action which had no impact on his working conditions. (SOF ¶5) CMTs performed the same duties and received the same pay and benefits no matter what division they were assigned to. (SOF ¶18) Plaintiff claims that Division 6 was an easier assignment because it was medium security, however Plaintiff admitted that he previously worked in Division 2, another medium security division. (SOF ¶23) Plaintiff's claim that he may have preferred Division 6 does not establish that Judkins' failure to assign him there was materially adverse, as being shifted to an equivalent job that an employee simply does not like as much does not create a Title VII claim. *Keen v. Merck Sharp & Dohnme Corp.*, 819 Fed. Appx. 423, 427 (7th Cir. 2020) ("the only action the employee experienced was a change to 'an essentially equivalent job' that she did not like as much"); *Fain v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir. 2007) (harder work assignments do not amount to adverse employment actions).

Plaintiff also is unable to show how a specific assignment would impact his job opportunities. When asked how an assignment to Division 6 would affect his career opportunities, Plaintiff initially did not even recall making that allegation, and only after direct questioning from his counsel did Plaintiff testify that such an assignment could be helpful to him career-wise because

11

transgender detainees were housed in Division 6 and he had experience working with marginalized communities, including transgender individuals. (SOF ¶28) This reason is purely speculative as it is a stretch to conclude that Plaintiff could gain experience working with transgender individuals when his only duty was to pass medications. (SOF ¶12). Plaintiff will not be able to show that Judkins' alleged failure to assign him to Division 6 had any detrimental effect, and his segregation claim must fail. *Autozone Inc.*, 860 F.3d at 569; *Martin v. F.E. Moran. Inc. Fire. Prot.*, 2018 U.S. Dist. LEXIS 54179, *116-118 (N.D. Ill. 2018).

C. **Plaintiff has failed to establish that the denial of paid leave was discriminatory.**

To establish a *prima facie* case of employment discrimination under the IHRA, plaintiff must first show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 919 (1st Dist. 2010).

1. **Plaintiff has not offered any evidence of anti-transgender animus related to his request for paid leave.**

Plaintiff's discrimination claim must fail, as his evidence of discrimination based on his gender related identity is purely speculative. The following individuals were involved in responding to Plaintiff's request for paid leave: Chief of Human Resources Barbara Pryor ("Pryor"), Leave Administration Manager Feroze Khan ("Khan"), Operations Counsel Timothy Hoppa ("Hoppa") and EEO Director Nicholas Krasucki ("Krasucki"). (SOF ¶¶41, 51, 52, 63) Plaintiff has not presented any evidence that any of these individuals harbored anti-transgender animus. Instead, undisputed facts demonstrate that each of these individuals worked to resolve and address Plaintiff's concerns about returning to work. (SOF ¶¶42, 46, 51, 52, 63, 66, 68, 69) County representatives encouraged Plaintiff to return to work and informed Plaintiff that he could

12

be placed at a different location if he was concerned about his safety at the Jail. (SOF ¶¶ 52, 63, 66, 68, 69) Human Resources met with Plaintiff and Plaintiff's union representative on multiple occasions to discuss what could be done to make Plaintiff feel comfortable returning to work, and was open to Plaintiff's suggestions as to employee training. (SOF ¶¶63, 69) There simply is no evidence that County representatives were motivated by anti-transgender animus when considering Plaintiff's leave requests.

### 2. The denial of paid leave was not an adverse employment action.

To show that he suffered an adverse employment action, Plaintiff must establish that the employment action was "materially adverse and not a mere inconvenience or an alteration of job responsibilities" *Owens,* 403 Ill. App. 3d at 919. "Adverse employment actions include things such as hiring, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Id*. Courts have held that the denial of leave requests are not materially adverse employment actions. *Griffin,* 356 F.3d at 829 (refusal to approve annual leave requests when work backlogged was not an adverse employment action); *Saggu v. DeJoy*, 2021 U.S. Dist. LEXIS 58107, *30 (N.D. Ill. 2021).

The denial of paid leave is not an adverse employment action. Defendant denied Plaintiff's request for a paid leave of absence because there were no leave options for the reasons for which he was seeking leave available to him under CCH policies or the collective bargaining agreement. (SOF ¶¶51, 53, 58) Plaintiff remained a CMT II on the Med Team, he was not transferred, demoted or disciplined, and could have returned to work at any time throughout his unapproved leave. (SOF ¶72) While courts have recognized that being forced to take an unpaid leave of absence may constitute an adverse employment action, *Arizanovska v. WalMart Stores, Inc*. 682 F.3d 698, 704 (7th Cir. 2012), here Plaintiff only lost pay because he chose not to report to work. (SOF ¶¶71,

13

72) Plaintiff claims that he was concerned about his safety at the Jail, however Defendant offered Plaintiff the opportunity to work at other locations, and Plaintiff turned those down. (SOF¶¶52, 66, 68, 71) Plaintiff's employment was not materially affected by the denial of his request for paid leave, and on that basis, Plaintiff's discrimination claim should not survive summary judgment.

   **3.**  **Plaintiff is unable to show that similarly situated employees were treated more favorably.**

Plaintiff's discrimination claim further fails because he has presented no evidence of similarly situated employees who were treated more favorably with regard to leave requests. In order to be similarly situated to comparators, Plaintiff must show that his "performance, qualifications and conduct, were comparable to the non-protected class member in all material respects." *Dandy v. United Parcel Service Inc.*, 388 F.3d 263, 274 (7th Cir. 2004). Plaintiff lacks personal knowledge that any cisgender employee was treated more favorably with regard to paid leave requests. (SOF ¶60) There were no cisgender employees who were granted paid leaves of absence under circumstances similar to Plaintiff. (SOF ¶¶58, 59) Khan and Hoppa were unaware of any employee who was placed on a paid leave due to a pending EEO investigation or because the employee was concerned about his or her own safety. (SOF ¶¶58, 59) Plaintiff simply will not be able to prove that cisgender employees were treated more favorably.

**D.**  **Plaintiff has failed to establish that the County's denial of his request for paid leave was retaliatory.**

To prove a IHRA retaliation claim, Plaintiff must present evidence that he engaged in statutorily protected activity, that he suffered an adverse action, and that there is a but-for causal connection between the two. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634 (2006). Plaintiff's retaliation claim fails because he has not established that he suffered an adverse action and will be unable to show causation.

1. **Even under a retaliation analysis, the denial of paid leave is not an adverse employment action.**

In the retaliation context, a plaintiff must show that the actions of which he complains were materially adverse and produced an injury or harm that would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Nagle,* 554 F.3d at 1119. The denial of Plaintiff's paid leave request does not constitute an adverse action. Plaintiff was not entitled to such a leave pursuant to CCH policies or the collective bargaining agreement. (SOF ¶¶53, 58) Plaintiff was not demoted, transferred or disciplined. (SOF ¶¶2, 72) Plaintiff remained in his position as a CMT II and only lost pay because of his own decision not to report to work. (SOF ¶¶71, 72) Plaintiff's retaliation claim fails because he cannot establish a materially adverse action.

2. **Plaintiff's retaliation claim further fails because there is no causal connection between the denial of Plaintiff's leave request and his protected activity.**

"[R]etaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). Retaliation claims under the IHRA similarly require but-for causation. *Mahran v. Advocate Health & Hosps. Corp.*, 2019 U.S. Dist. LEXIS 30734 (N.D. Ill. 2019). A plaintiff may establish a causal link through "an admission of discriminatory animus or 'suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence that the employer's proffered reason for the adverse action was pretextual.'" *Id.*

Plaintiff's retaliation theory fails because there is no evidence that any of the individuals involved in responding to his request for paid leave were motivated by his prior protected activity. There were no comments made by the decision makers that would infer a retaliatory motive. There were no employees who were treated more favorably. (SOF ¶¶58, 59, 60) Plaintiff's request for a paid leave was denied after he complained about discrimination, however "suspicious timing

15

alone is rarely sufficient to create triable issue." *Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 693 (7th Cir. 2014). Instead, as discussed above, the overwhelming evidence shows that County representatives worked to address Plaintiff's concerns about returning to work. (SOF ¶¶52, 63, 65, 66, 68, 69) When asked about his theory of retaliation, Plaintiff testified that he was denied both a paid leave and an unpaid leave, and that he "had nothing to go on but my experience and that's what I believe." (SOF ¶61) The fact that Plaintiff was denied a paid leave is not enough to prove it was retaliatory. "[P]laintiffs must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have; [the court's] favor toward the non-moving party on summary judgment does not extend to drawing inferences that are supported by only speculation or conjecture." *Brown*, 700 F.3d at 1108. Plaintiff has not shown a causal connection between his complaints and the denial of his request for paid leave.

## CONCLUSION

WHEREFORE for all of the above reasons, Defendant Cook County requests this Court grant summary judgment on all counts on their behalf.

DATE: November 19, 2021

Respectfully submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

/s/ Colleen Harvey
By: Colleen Harvey
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-6665
colleen.harvey@cookcountyil.gov