IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOGAN M. GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| COUNTY OF COOK, an Illinois | ) | No. 1:19-cv-06091 |
| county, d/b/a COOK COUNTY | ) | |
| HEALTH & HOSPITALS SYSTEM | ) | |
| and/or CERMAK HEALTH SERVICES; | ) | |
| and MELVIN JUDKINS, in his | ) | |
| individual capacity; | ) | Judge Gary S. Feinerman |
| | ) | |
| Defendants. | ) | Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY,
REPORT AND OPINIONS OF DR. ASHLEY AUSTIN**

NOW COMES the Plaintiff, Logan M. Grimes ("Grimes"), by and through

his attorney, Joanie Rae Wimmer, and submits this response in opposition to

the Defendants' Motion To Exclude The Testimony, Report And Opinions Of Dr.

Ashley Austin (hereinafter "Defendants' motion" or "Defendants' Motion To

Exclude").  (Although the title of the motion seeks to exclude Dr. Austin's report

as well as her opinions and testimony, the report required by Fed.R.Civ.P.

26(a)(2) is for purposes of discovery and is not generally tendered to the jury.)

**Introduction.**  According to the Second Amended Complaint, Grimes is a

transgender man, *i.e.*, his designated sex at birth was female, but in and

around 2000, he was diagnosed with gender dysphoria, and since then, he has

undergone various medical interventions in order to treat his gender dysphoria.

(Second Amended Complaint, Doc. 13, count I, ¶4.)  Those medical interventions included hormone therapy (treatment with testosterone), as well as chest reconstructive surgeries, now known as gender confirmation surgeries.  (Doc. 13, count I, ¶ 4)  As a result of those interventions, before 2008, Grimes had male pattern baldness, a low (male) voice, a full beard, and a male build.  (Doc. 13, count I, ¶5)  From 2008 until the events giving rise to this case, Grimes was living in stealth, *i.e.,* he did not disclose his transgender status publicly; he disclosed it only to close friends, not to neighbors, casual acquaintances or co-workers.  (Doc. 13, count I, ¶7, 8)  Grimes started working as a Medical Technician II at the Cook County jail five years before the events giving rise to this lawsuit.  (Doc. 13, count I, ¶¶2, 13)  Count I of the Second Amended Complaint in this case was brought against Melvin Judkins, Grimes' supervisor at work.  In that count Grimes alleged that Judkins outed him as transgender to some of Grimes' co-workers.  (Doc. 13, count I, ¶13)  This Court has held that count I of the Second Amended Complaint states a claim under 42 U.S.C. §1983 for violation of Grimes' right to substantive due process for disclosure of confidential or private medical information.  (Doc. 43, pp. 4-8)

Count III of the Second Amended Complaint (Doc. 13, pp. 12-16) was brought against Judkins and alleges a state law claim for intentional infliction of emotional distress caused by Judkins' outing of Grimes as transgender to Grimes' co-workers.  One of the elements of that claim which Grimes must prove is that Judkins' conduct caused him "severe emotional distress."  (Doc. 43, p. 10)

Because gender dysphoria and its effects, and the prerequisites and the process of treatment for gender dysphoria are beyond the ken of the ordinary juror, Grimes retained the services of an expert witness, Dr. Ashley Austin, to give her opinion as to whether, in Grimes' case, disclosure of Grimes' transgender status was tantamount to a disclosure of confidential or private medical information, and as to whether disclosure of an individual's transgender status to others who are unaware of the person's transgender status has the potential to cause significant emotional distress and exacerbate the individual's gender dysphoria.

Dr. Austin's report states that she is a full professor at Barry University School of Social Work in Miami, Florida where she is also the Distinguished Professor for the Center for Human Rights and Social Justice. (Austin report, Doc. 112-1, Page 10 of 14) (Dr. Austin's report, which is Exhibit A to the Defendants' Motion To Exclude (Doc. 112-1), does not have page numbers, so, in citing Dr. Austin's report, the Plaintiff has used the page numbers assigned to that exhibit by the Court's CM/ECF system.) Dr. Austin has her PhD in social work. (Austin report, Doc. 112-1, Page 10 of 14) Dr. Austin is also a licensed clinical social worker (LCSW) with a private practice named Affirmative Change where she serves as a therapist providing mental health services. (Austin dep., p. 25, lines 5-11, and p. 40, line 3-p. 41, line 13) (The deposition of Dr. Austin is Exhibit B to the Defendants' Motion To Exclude. Citing references to Dr. Austin's deposition are to the page numbers created by the court reporter.) As a professor, Dr. Austin has taught courses in clinical

practice, among other subjects.  (Austin dep., p. 28, line 6-p. 29, line 2)  As Dr.

Austin stated in her report:

> "Through my Transgender Perspectives Research Lab at Barry
> University, I have been actively engaged in conducting and
> publishing research focused on elucidating the experiences of
> transgender individuals in the US for the last decade (see
> publication list below).  My most recent project has focused on
> gathering qualitative visual and narrative data that adds to the
> gender dysphoria literature.  My team has published one study
> from this data and has three more manuscripts in development.
> We are presenting the data at several different national research
> conferences throughout 2021.

> I am involved in several collaborative research initiatives focused
> on improving the well-being of youth and adults with diverse
> sexual orientations and gender identities.  The research emerging
> from this work highlights factors that contribute to psychological
> distress and undermine the emotional well-being of transgender
> young people as well as the factors that contribute to resilience
> (see publication list below).

> I have a private practice through which I provide therapeutic
> services to transgender children, teens, and adults.  I am a current
> member of the World Professional Association of Transgender
> Health (WPATH) and as such use the most current SOC [Standards
> of Care] (version 7) to guide this work."

> (Austin report, Doc. 112-1, Page 10 of 14.)

At her deposition, Dr. Austin stated that the statements she wrote in her report

were true.  (Austin dep. p. 174, lines 14-17)  Dr. Austin's report indicated that

in the last ten years, she has published 33 peer reviewed journal articles

dealing with LGBTQ+ and transgender issues.  (Austin report, Doc. 112-1,

Pages 10-13 of 14)  At her deposition, Dr. Austin testified that she, herself, is

also is a peer reviewer.  (Austin dep., p. 77, line 6-p. 78, line 18)

Dr. Austin testified that in her private practice, she serves as a

psychotherapist in her capacity as as an LCSW.  (Austin dep., p. 152, line 16-

p. 153, line 14)  She began her private practice in 2016, and it is has focused

on transgender individuals.  (Austin dep., p. 56, line 8-p. 57, line 16)  Dr.

Austin testified that a transgender person seeking to transition would have a

medical team to assist them.  (Austin dep., p. 169, line 16-p. 171, line 1)  Dr.

Austin testified that she is a member of the medical team of her transgender

patients who are wishing to or are undergoing transitioning.  (Austin dep., p.

170, lines 5-9)  Dr. Austin testified that a great part of her practice involves the

initial assessment of gender dysphoria and ongoing assessment to provide

letters for clients who are seeking medical interventions for their gender

dysphoria.  (Austin dep., p. 168, lines 14-22)  In response to a question about

writing letters to medical doctors about a patient's gender dysphoria, Dr.

Austin testified as follows:

> "In many instances, doctors will only provide gender affirming
> interventions if they -- Well, certainly surgeries, if they receive one,
> usually, at least one letter from a professional like myself.
> Sometimes they need two letters from two different people, so I
> have written a number of those.  In some instances it's even
> required now for -- for hormone replacement therapy for
> testosterone or for estrogen for trans women.  So I have written a
> number of these letters to different medical professionals, who are
> both endocrinologists and/or surgeons and other doctors."

(Austin dep., p. 168, line 23-p. 169, line 15)

See also *Campbell v. Kallas*, 936 F.3d 536, 539 (7th Cir. 2019) (under WPATH

Standards of Care to be eligible for hormone therapy, an individual must have,

*inter alia*, "[p]ersistent, well-documented gender dysphoria").  Dr. Austin has

had about a hundred patients who pursued or are pursuing transition.  (Austin

dep., p. 171, lines 2-8)

**Dr. Austin's opinions in this case.** Dr. Austin reached two opinions in this case, neither of which is particularly surprising or controversial.

The first opinion was the following: "It is my expert opinion to a reasonable degree of certainty in my field that the disclosure of Mr. Logan Grimes' transgender status by his supervisor, Melvin Judkins, to Mr. Grimes' co-workers is tantamount to the disclosure by Mr. Judkins of Mr. Grimes' confidential medical information." (Austin report, Doc. 112-1, Page 3 of 14)

In connection with this opinion, Dr. Austin noted that the WPATH's Standards of Care require informed consent from the patient and an assessment and referral from a qualified mental health provider in order for the patient to access the majority of gender affirming medical interventions. (Austin report, Doc. 112-1, Page 3 of 14) Dr. Austin noted that hormone therapy for transgender men (testosterone) "deepens the voice, increases muscle mass, redistributes body fat in a more masculine way (e.g., stops menses, increases facial and body hair, can cause male pattern baldness, cause changes to skin including larger pores and slightly rougher texture . . .)." (Austin report, Doc. 112-1, Page 3-4 of 14) Dr. Austin explained the reasoning behind her opinion as follows:

> "In sum, Mr. Grimes is a transgender man who was able to pass and be stealth at work as a result of his past (surgical interventions) and ongoing (weekly doses of testosterone) medical gender affirming interventions that address his medical condition (gender dysphoria). As such, it is clear that the disclosure of Mr. Grimes' transgender identity by his supervisor Mr. Judkins was tantamount to a disclosure of Mr. Grimes' private and confidential medical information, namely his issues with gender dysphoria, the corresponding gender dysphoria diagnosis, and the confidential medical interventions he has accessed and/or continues to access

- 6 -

in order to alleviate his gender dysphoria and affirm his masculine gender identity. Given that Mr. Grimes is very obviously male presenting, when workers were told of Mr. Grimes' transgender identity, the fact that Mr. Grimes had transitioned through a range of gender affirming medical interventions would become known."

(Austin report, Doc. 112-1, Page 4 of 14)

The second opinion was as follows: "It is my expert opinion to a reasonable degree of certainty in my field that the disclosure of an individual's transgender status to others who are unaware of this person's transgender identity/status has the potential to cause significant emotional distress and exacerbate the individual's gender dysphoria." (Austin report, Doc. 112-1, Page 4 of 14) Dr. Austin gave a detailed explanation of her reasoning behind this opinion supported by interspersed references to numerous peer reviewed publications. (Austin report, Doc. 112-1, Pages 4-9 of 14)

**Argument.** The Defendants, although given two months to disclose a rebuttal expert (Doc. 75) if they could find one who disagreed with Dr. Austin's two opinions, never disclosed a rebuttal expert. Instead, they filed Defendants' Motion To Exclude which seeks to exclude Dr. Austin's testimony and report pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The challenges that the Defendants have made to Dr. Austin's two opinions are not well taken.

As state in *Monroe v. Jeffreys*, 2021 WL 391229 (S.D.Ill. 2021), a case in which the Court noted that it had previously found WPATH's Standards of Care to be the appropriate benchmark for treating gender dysphoria (p. 2, footnote 3), the Court stated:

- 7 -

"Courts in the Seventh Circuit conduct a three-step analysis under *Daubert*. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). [Footnote omitted.] First, the district Court must determine whether the person whose testimony is offered is in fact an expert, as codified in Rule 702 through 'knowledge, skill, experience, training or education.' *Id.* (citing Fed.R.Evid. 702). Second the district court must determine that the expert's reasoning or methodology is reliable. *Ervin*, 492 F.3d at 904; *see Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho* [*Tire Co., Ltd. v. Carmichael*], 526 U.S. [137 (1999)] at 147). In assessing reliability, the court looks at a non-exhaustive list of factors that include: '(1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community.' *Ervin*, 492 F.3d 901, 904 (7th Cir. 2007) (citing *Daubert*, 509 U.S. at 593-94). '[T]he district court may apply these factors flexibly as the case requires.' *Gopalratnam*, 877 F.3d at 780 (quoting *Krik* [*v. Exxon Mobil Corp.*], 870 F.3d [669 (7th Cir. 2017)] at 674, and citing *Kumho*, 526 U.S. at 150). Finally, the 'testimony must assist the trier of fact to understand the evidence or to determine a fact at issue.' *Ervin*, 492 F.3d at 904. Resolution of an expert's credibility or the correctness of his or her theories under the particular circumstances of a given case is a factual inquiry, left to the jury's determination after opposing counsel has cross-examined the expert at issue as to the conclusions and facts underlying his or her opinion. *Smith* [*v. Ford Motor Co.*], 215 F.3d [713 (7th Cir. 2000) at 718 (citing *Walker* [*v. Soo Line Railroad Co.*], 208 F.3d [581 (7th Cir. 2000)] at 589-90)."

(Pages 4-5.)

The Defendants concede the first point: Dr. Austin is an expert. They argue, however, that her reasoning or methodology is insufficiently reliable for the Court to allow her to testify, and that her opinions would not assist the trier of fact to determine a fact in issue. These arguments are not well taken.

**A. First Opinion.** Dr. Austin explained her reasoning for her opinion that disclosure of Mr. Grimes' transgender status was tantamount to disclosure of confidential or private medical information, in part, as follows:

> "In sum, Mr. Grimes is a transgender man who was able to pass
> and be stealth at work as a result of his past (surgical
> interventions) and ongoing (weekly doses of testosterone) medical
> gender affirming interventions that address his medical condition
> (gender dysphoria). As such, it is clear that the disclosure of Mr.
> Grimes' transgender identity by his supervisor Mr. Judkins was
> tantamount to a disclosure of Mr. Grimes' private and confidential
> medical information, namely his issues with gender dysphoria, the
> corresponding gender dysphoria diagnosis, and the confidential
> medical interventions he has accessed and/or continues to access
> in order to alleviate his gender dysphoria and affirm his masculine
> gender identity. Given that Mr. Grimes is very obviously male
> presenting, when workers were told of Mr. Grimes' transgender
> identity, the fact that Mr. Grimes had transitioned through a range
> of gender affirming medical interventions would become known."

(Austin report, Doc. 112-1, Page 4 of 14)

Her reasoning was supported by her knowledge of WPATH Standards of
Care as well as the way in which transgender health care is currently provided
which authorize specific medical interventions only upon an assessment of
gender dysphoria by a qualified mental health provider. And Dr. Austin
testified further, "[I]t's a universal truth that gender—disclosing someone's
trans identity means that you've disclosed that they have gender—gender
dysphoria." (Austin dep., p. 161, line 24-p. 162, line 3.) Gender dysphoria is
a serious medical condition. (*Fields v. Smith*, 653 F.3d 550, 555 (7th Cir.
2011).) See also the diagnostic definition of gender dysphoria in Dr. Austin's
report. (Austin report, Doc. 112-1, Page 2 of 14) Dr. Austin's first opinion
was supported by reliable reasoning. The Defendants argue that Dr. Austin's
opinions "are unsupported and appear to be formed from subjective, personal
beliefs" (Defendants' motion, p. 9), but as shown above, that was not the case
with regard to Dr. Austin's opinion that Judkins' disclosure of Grimes'

- 9 -

transgender status to Grimes' co-workers was tantamount to disclosure of confidential medical information.

Defendants point out that, in her discussion in her report regarding her first opinion, Dr. Austin stated that "Mr. Grimes' accounts illustrate the transphobic attitudes and beliefs which permeated the culture at Cook County Health and Hospital Systems." (Austin report, Doc. 112-1, Page 3 of 14.) The Defendants argue that this was one of Dr. Austin's expert "opinions" and that said "opinion" was not supported by her expertise or reliable reasoning or methodology. (Defendants' motion, pp. 12-13.) But Dr. Austin's reference to Mr. Grimes' accounts was not an expert opinion of Dr. Austin, and, in fact, Dr. Austin testified that her opinion that Judkins' disclosure of Grimes' transgender status to his co-workers was tantamount to the disclosure of confidential medical information would have been the same whether or not there was a culture of transphobia at the Cook County jail. (Austin dep., p. 173, line 13-p. 174, line 8.)

The Defendants also argue that Dr. Austin's first opinion will not assist the trier of fact to understand the evidence or to determine a fact at issue. (Defendants' motion, p. 11.) That argument is not well taken. In order to prevail on count I, the substantive due process count, Grimes must show, *inter alia*, that Judkins disclosed Grimes' private or confidential medical information. (See *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000).) Dr. Austin's first opinion is certain relevant to that factual issue.

The Defendants argue that Dr. Austin's first opinion should not be

allowed because it invades the province of the jury and is an opinion on an ultimate issue in the case. (Defendants' motion, pp. 10-12.) Yet Federal Rule of Evidence 704(a) provides, "An opinion is not objectionable just because it embraces an ultimate issue." The Defendants also argue that Dr. Austin's first opinion should not be allowed because Dr. Austin's opinion offers "legal conclusions" and Dr. Austin is not an attorney or constitutional expert. (Defendants Motion To Exclude, pp. 11-12.) But concluding that disclosure of one's transgender status is tantamount to disclosure of private or confidential medical information is not a legal conclusion; it is a statement of fact. If Dr. Austin were trying to opine that what Judkins did was a violation of Grimes' substantive due process rights, the Defendants argument in this regard would have merit. But Dr. Austin's first opinion has nothing to do with legal conclusions or statements of law. Finally, it should be noted that Dr. Austin identified the specific medical information which Judkins' conduct effectively disclosed, *i.e.*, that Grimes suffered from gender dysphoria and has had hormone therapy which has allowed him to grow a beard, develop male pattern baldness, and appear unambiguously male. If the Defendants wish to argue to the jury that the foregoing is not medical information, they certainly can make that argument, but there is no basis to bar Dr. Austin from giving the jury her opinion that Judkins' conduct was tantamount to a disclosure of that information, and the bases for her opinion. And it is essential that the jury be given this information because the average person knows very little about what it means to be transgender, about gender dysphoria, or about the process of

- 11 -

transitioning.

**B. Second Opinion.** Dr. Austin's second opinion is that "the disclosure of an individual's transgender status to others who are unaware of this person's transgender identity/status has the potential to cause significant emotional distress and exacerbate the individual's gender dysphoria." (Austin report, Doc. 112-1, Page 4 of 14)  As pointed out by the Defendants, this opinion is not focused on Grimes' particular case.  In their motion to exclude, the Defendants have not really explained why this opinion does not pass muster under *Daubert*.  A review of Dr. Austin's report shows that she supported this opinion with reliable reasoning supported by pertinent references to peer reviewed literature.  (Austin report, Doc. 112-1, Pages 4-9 of 14)  The Defendants also argue that this opinion would not assist the jury in this case (Defendants' motion, p. 13), arguing, essentially, that Judkin's disclosure of Grimes' transgender status either did or did not cause Grimes' severe emotional distress, and Dr. Austin's opinion will not assist the jury in making that determination.  That argument is utterly without merit.  It is likely that the entire jury venire will be cis-gender.  Approximately 0.6% of the population is transgender. https://williamsinstitute.law.ucla.edu/publications/trans-adults-united-states/     Most cis-gender people would feel no distress at all if someone were to disclose that they are not transgender, i.e., that they are cis-gender.  Cis-gender people, who have never experienced gender dysphoria, have very little frame of reference to understand how a disclosure of a transgender person's

transgender status to people unaware of it might affect the transgender person or why. Dr. Austin's second opinion and her explanation of her opinion, which is supported by peer reviewed literature, provide that frame of reference that will assist the jury as they analyze the evidence presented in this case in order to determine if Grimes experienced severe emotional distress.

### C. Defendants' general criticisms of Dr. Austin and her report unrelated to specific opinions.

The Defendants have argued that Dr. Austin's opinions should be barred based on testimony from pages 59 and 60 of her deposition that she is committed to transgender causes, an advocate for transgender issues and has been active in advocating for transgender and gender nonconforming individuals. (Defendants' Motion To Exclude, p. 10) None of that testimony is a basis to exclude Dr. Austin's opinions. The Court rejected a similar argument in *Monroe v. Baldwin*, 424 F.Supp. 3d 526, 543 (S.D.Ill. 2019) (court rejected the defendants' argument that the plaintiffs' experts should be discredited because of their involvement with WPATH and their experience in testifying for plaintiffs in cases involving gender dysphoria). The Defendants might as well argue that all experts who belong to the NAACP or who support the ACLU should be barred from testifying.

The Defendants seek to support their motion to exclude by falsely stating that Dr. Austin "acknowledge[ed] that she did not conduct any independent research for this case." (Defendants' motion, p. 2.) In the reference cited by the Defendants, however, Dr. Austin testified that she had not done any research about jail settings or about corrections in general (Austin dep., p. 87,

lines 15-23), not that she had not conducted any research for her opinions. And the Defendants have not explained why research about jails or corrections was needed for Dr. Austin to reach the opinions she reached.

Finally, the Defendants fault Dr. Austin for not reading all the depositions in this case. But the Defendants have not explained why reading all the depositions in this case would have been necessary for Dr. Austin to reach the opinions she reached. Dr. Austin, herself, testified as follows when asked about this:

> "Q  To properly serve as an expert witness, would you agree that it would be helpful to review all the deposition transcripts in this case?
>
> A  I'm not sure that it would.
>
> Q  Why not?
>
> A  Because I wasn't formulating an opinion on whether it did or did not occur. I wasn't asked to report whether this happened. I don't think I'd be capable of rendering an opinion on whether it did or did not happen. I'm not—I'm not—As you mentioned, I'm not a lawyer so I don't—or judge—so I wouldn't be able to ascertain that. I was looking at the two questions relating to medical informa—you know, sort of transgender status as medical information and the impact on distress and well-being. So those other—That other information was outside of what I was going to be able to—to speak to."

(Austin dep., p. 101, line 21-p. 102, line 14.)

**Conclusion.**  Dr. Austin is a highly respected expert on the condition of being transgender, gender dysphoria, healthcare for transgender people, and the treatment of gender dysphoria. She has expressed two opinions that are utterly non-controversial in her field. The Defendants, although given two months to try to find an expert who disagreed with Dr. Austin, did not find one.

- 14 -

Instead they filed a motion to bar Dr. Austin from testifying, which figuratively threw everything at her but the kitchen sink, even arguing that Dr. Austin should be barred from testifying because Dr. Austin, who has a thriving practice as a licensed clinical social worker helping transgender patients, is an advocate for transgender issues, and because she did not do independent research on jails and corrections!  Apparently, the Defendants wish to keep the jury ignorant about gender dysphoria and what it means to be transgender, and how transgender health care is provided, so that the jury will have to decide this case in a vacuum.  Fortunately, the Defendants' Motion To Exclude is without merit for the reasons stated above.  The Plaintiff respectfully requests this Court to deny the Defendants' Motion To Exclude and to allow Dr. Austin to testify as to her opinions and the bases therefor at the trial of this case.

Respectfully submitted,


_____/s/ Joanie Rae Wimmer_____
Joanie Rae Wimmer


JOANIE RAE WIMMER
Attorney at Law
715 Lake Street, Suite 516
Oak Park, Illinois  60301
(630) 810-0005
jwimmerlaw@sbcglobal.net
Attorney No. 3125600

- 15 -