IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOGAN M. GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| COUNTY OF COOK, an Illinois | ) | No. 1:19-cv-06091 |
| county, d/b/a COOK COUNTY | ) | |
| HEALTH & HOSPITALS SYSTEM | ) | |
| and/or CERMAK HEALTH SERVICES; | ) | |
| and MELVIN JUDKINS, in his | ) | |
| individual capacity; | ) | Judge Gary S. Feinerman |
| | ) | |
| Defendants. | ) | Magistrate Judge Jeffrey T. Gilbert |

PLAINTIFF'S STATEMENT OF ADDITIONAL
MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1(b)(3)
IN RELATION TO THE MOTION FOR SUMMARY JUDMENT
FILED ON BEHALF OF DEFENDANT MELVIN JUDKINS

NOW COMES the Plaintiff, LOGAN M. GRIMES (hereinafter "Grimes" or "the Plaintiff"), by and through his attorney, JOANIE RAE WIMMER, and, pursuant to Local Rule 56.1(b)(3), submits this statement of additional material facts in opposition to the motion for summary judgment filed by Defendant MELVIN JUDKINS ("Judkins"). In the paragraphs herein, references to the exhibits filed by Defendant MELVIN JUDKINS with his Local Rule 56.1(a)(2) statement of material facts will be to "Defendant Judkins Exhibit" with the letters assigned by said Defendant to his exhibits. So, for example, a reference to Exhibit C of the Local Rule 56.1(a)(2) statement of material facts filed by Defendant Judkins will be to "Defendant Judkins Exhibit C." References to the exhibits submitted by the Plaintiff with Plaintiff Logan Grimes' Response To The Local Rule 56.1(a)(2) Statement Of Material Facts

- 1 -

Filed By Defendant Melvin Judkins will be to "Plaintiff's Resp. Exhibit" with the appropriate number. So, for example, a reference to Exhibit 2 of Plaintiff Logan Grimes' Response To The Local Rule 56.1(a)(2) Statement Of Material Facts Filed By Defendant Melvin Judkins will be to "Plaintiff's Resp. Exhibit 2." Finally, reference to the exhibits submitted by the Plaintiff with this statement of additional facts and attached hereto will be to "Plaintiff's Add. Exhibit" with the number assigned to the exhibit herein. In the case of exhibits which are deposition transcripts, references to page numbers will be to page numbers of the deposition transcripts, and not to the page numbers assigned by the Court's CM/ECF system.

Plaintiff's Paragraph 1: The Plaintiff was born in 1962 with a vagina, not a penis; he developed breasts in his teenage years, and, for the first 37 years of his life, lived as a female. (Affidavit of Logan Grimes, Plaintiff's Add. Exhibit 1, ¶ 3)

Plaintiff's Paragraph 2: In 2000 Grimes was diagnosed with gender identity disorder, which is now referred to as gender dysphoria (Defendant Judkins Exhibit C, p. 123, lines 3-6), and in 2003, he commenced hormone therapy, testosterone, to treat his gender dysphoria, and Grimes is still taking testosterone today (Defendant Judkins Exhibit C, p. 123, lines 13-19; Plaintiff's Add. Exhibit 1, ¶ 4; Plaintiff's Resp. Exhibit 4)

Plaintiff's Paragraph 3: Grimes also had chest reconstructive surgery in 2004 and what they call bottom surgery or gender confirmation surgery in 2006 to treat his gender dysphoria. (Defendant Judkins Exhibit C, p. 123, line 20-p. 124, line 9; Plaintiff's Add. Exhibit 1, ¶¶ 5, 6)

Plaintiff's Paragraph 4: As a result of the hormone therapy, chest reconstructive surgery and gender confirmation surgery, by the year 2008 and since then Grimes has appeared unambiguously male, with a male build, male pattern baldness, and a beard or mustache. (Plaintiff's Add. Exhibit 1, ¶ 7)

Plaintiff's Paragraph 5: In 2003 Logan Grimes changed his name from his birth name to Logan M. Grimes, and by 2004 he had had the sex marker changed from F to M on his driver's license and had had the record of his sex with the Social Security Administration changed from female to male. (Plaintiff's Add. Exhibit 1, ¶¶ 8, 9)

Plaintiff's Paragraph 6: When Grimes transitioned, he worked at Howard Brown Health Center and, because he transitioned on the job, he had no choice but had to be open about being transgender. (Judkins Exhibit C, p. 29, lines 6-p. 30, line 2)

Plaintiff's Paragraph 7: Commencing in 2008, Grimes kept his transgender status private, and from then until after September 28, 2018, Grimes did not disclose his transgender status to anyone but family members. (Plaintiff's Add. Exhibit 1, ¶ 10)

Plaintiff's Paragraph 8: Although Grimes testified that he had publicly told the story of his transition to different publications, and that he spoke with the Windy City Times or a similar publication about his transition (Defendant Judkins Exhibit C, p. 127, line 20-p. 128, line 22), one of the disclosures was after the grievance thing with the county relating to Judkins and the other occasion was prior to 2008. (Defendant Judkins Exhibit C, p. 127, line 20-p. 129, line 1)

Plaintiff's Paragraph 9: In September of 2018, Judkins supervised the correctional medical technicians who delivered prescribed medications to the detainees in the jail, not more than 14 people referred to as the med team, including Grimes. (Defendant Judkins Exhibit E, p. 15, line 8-p. 16, line 9; p. 22, line 20-p. 23, line 8)

Plaintiff's Paragraph 10: Katie Healy was a correctional medical technician (Katie Healy deposition transcript, Plaintiff's Add. Exhibit 2, p. 10, line 17-p. 11, line 11) who worked on the med team and was supervised by Judkins. (Plaintiff's Add. Exhibit 2, p. 12, lines 8-17)

Plaintiff's Paragraph 11: On September 28, 2018, Healy, Judkins, paramedic Bain, and

paramedic Centeno were in the back office of the med team, talking about a new guy who was supposed to start as well as a paramedic named Gierke, and Judkins asked if the others thought Gierke was gay. (Plaintiff's Add. Exhibit 2, p. 16, line 4-p. 20, line 11)

Plaintiff's Paragraph 12: After discussing whether Gierke was gay, Judkins said, "You know, like Logan," and Judkins said, "Yeah, come on—you know—Logan. I worked with him for a long time and he's—you know—he's transgender." (Plaintiff's Add. Exhibit 2, p. 20, line 12-p. 21, line 12)

Plaintiff's Paragraph 13: At that point in time, protective custody for transgenders was predominantly in Division 6 of the jail. (Plaintiff's Add. Exhibit 2, p. 29, lines 1-7)

Plaintiff's Paragraph 14: Katie Healy had heard that Grimes was transgender before September 28, 2018, from another paramedic who used to work on the med team named Beth Connors. (Plaintiff's Add. Exhibit 2, p. 31, line 6-p. 32, line 13)

Plaintiff's Paragraph 15: Bain, a correctional medical technician on the med team who was also supervised by Judkins (Kirsten Bain-Norris deposition transcript, Plaintiff's Add. Exhibit 3, p. 12, line 1-p. 13, line 7; p. 66, lines 10-17), testified that during the conversation on September 28, 2018, Judkins said that Grimes is transgender (Plaintiff's Add. Exhibit 3, p. 24, line 3-p. 26, line 15), and that, prior to that time, she (Bain) had not heard from anyone that Grimes was transgender (Plaintiff's Add. Exhibit 3, p. 36, lines 15-17).

Plaintiff's Paragraph 16: Arturo Centeno, who began working on the med team under Judkins' supervision in September of 2018 (Arturo Centeno deposition transcript, Plaintiff's Add. Exhibit 4, p. 10, line 21-p. 11, line 16), testified at his deposition that the conversation on September 28, 2018, was a matter that he once knew about but could no longer recall well enough to testify about fully and accurately (Plaintiff's Add. Exhibit 4, p. 35, lines 3-8).

Plaintiff's Paragraph 17: Centeno testified, however, that Centeno Deposition Exhibit No. 1 (Plaintiff's Add. Exhibit 5) was an email Centeno sent to Mr. Tillar on October 16, 2018. (Plaintiff's Add. Exhibit 4, p. 20, lines 3-13)

Plaintiff's Paragraph 18: Centeno testified that he wrote the email when the matter was fresh in his memory, and that the email accurately reflects his knowledge at the time (Plaintiff's Add. Exhibit 4, p. 35, lines 9-15), and that John Tillar (the union representative) "just told us to write what had happened in the room at the time, whatever we remembered and to write an email and send it to him so there would be a paper trail." (Plaintiff's Add. Exhibit 4, p. 36, lines 9-16)

Plaintiff's Paragraph 19: Centeno's email to John Tillar stated as follows:

"On September 28 2018, I was sitting in one of the med-tech rooms with Paramedic Bain and Paramedic Healy inputting meds that we had delivered throughout the day when Supervisor Melvin walked into the room and started talking to us. The conversation came up about a possible new hire for the team which Paramedic Healy and i knew from the EMS world and we began to tell mel about his work ethics, then the conversation switched over to a current employer who was Paramedic Gireke who i don't know only in passing about his sexuality stating that if he was gay. I answered i wasn't sured but people assume that he is and Paramedic Bain stated he was a ricky rescue. Mel stated he reminded him of a mountain man which I'm unsure of what that means, then Supervisor Mel switched over to a coworker of our Paramedic Logan stating that he had and issue in division six ' Ive known logan for many years and he has never told but' thats when Healy had given Mel a strong look but he began to proceed ' I'm sure they know and he looked at me but i sat there with no response because I've only known logan for a month since I'm new to the department, then he drew his attention to Paramedic Bain stating, ' Well I'm sure Bain knows, rite bain you know' Healy then responded to mel ' i don't think they know mel. He then asked the same question and healy responded to the response again. Mel then stated ' Logan is a transgender thats why he cant go to division six' I then began to make myself look busy because i no longer wanted to be part of the conversation because of what was said. Paramedic Bain then stated that she had no idea as well as myself. Shortly after Mel left the room"

(Centeno Deposition Exhibit No. 1, Plaintiff's Add. Exhibit 5)

Plaintiff's Paragraph 20: Centeno testified that he had no reason to believe prior to the conversation on September 28, 2018, that Grimes is transgender. (Plaintiff's Add. Exhibit 4, p.

67, lines 12-16)

Plaintiff's Paragraph 21: Grimes never told Judkins that he (Grimes) is transgender and never gave Judkins permission to disclose his (Grimes') transgender status to anyone else. (Plaintiff's Add. Exhibit 1, ¶ 11)

Plaintiff's Paragraph 22: Ashley Austin, Ph.D. an expert witness retained by the Plaintiff, testified that the statements she wrote in her report in this case are all true to the best of her knowledge and belief. (Ashley Austin, Ph.D. deposition transcript, Plaintiff's Add. Exhibit 6, p. 174, lines 14-17)

Plaintiff's Paragraph 23: Dr. Austin has a Ph.D. in social work and is a full professor at Barry University School of Social Work in Miami, Florida, where she is also the Distinguished Professor for the Center of Human Rights and Social Justice. (Austin report under Fed.R.Civ.P. 26(a)(2), Plaintiff's Add. Exhibit 7, p. 9)

Plaintiff's Paragraph 24: Dr. Austin is also a licensed clinical social worker (LCSW) with a private practice named Affirmative Change, which is focused on transgender individuals, where she serves as a therapist providing mental health services. (Plaintiff's Add. Exhibit 6, p. 25, lines 5-11; p. 40, line 3-p. 41, line 13; p. 56, line 8-p. 57, line 16)

Plaintiff's Paragraph 25: Dr. Austin testified that a great part of her practice involves the initial assessment of gender dysphoria and ongoing assessment to provide letters to clients who are seeking medical interventions for their gender dysphoria. (Plaintiff's Add. Exhibit 6, p. 168, lines 14-22)

Plaintiff's Paragraph 26: Dr. Austin testified at her deposition as follows in response to a question about the part of her practice that involves writing letters to medical doctors about a client's gender dysphoria:

> "In many instances, doctors will only provide gender affirming interventions if they -- Well, certainly surgeries, if they receive one, usually, at least one letter from a professional like myself. Sometimes they need two letters from two different people, so I have written a number of those. In some instances it's even required now for -- for hormone replacement therapy for testosterone or for estrogen for trans women. So I have written a number of these letters to different medical professionals, who are both endocrinologists and/or surgeons and other doctors."

(Plaintiff's Add. Exhibit 6, p. 168, line 23-p. 169, line 15)

Plaintiff's Paragraph 27: Dr. Austin has published 33 peer reviewed journal articles dealing with LGBTQ+ and transgender issues (Plaintiff's Add. Exhibit 7, pp. 9-12), and she, herself, is a peer reviewer (Plaintiff's Add. Exhibit 6, p. 77, line 6-p, 78, line 18)

Plaintiff's Paragraph 28: Gender dysphoria is defined in the American Psychiatric Association's most recent addition (2013) of the Diagnostic and Statistical Manual of Mental Disorders 5 (DSM-5) as follows:

> "A marked incongruence between one's experienced/expressed gender and assigned gender, of at least six months' duration, as manifested by at least two or more of the following:
>
>   1. A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics)
>
>   2. A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics)
>
>   3. A strong desire for the primary and/or secondary sex characteristics of the other gender
>
>   4. A strong desire to be of the other gender (or some alternative gender different from one's assigned gender)
>
>   5. A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender)
>
>   6. A strong conviction that one has the typical feelings and reactions of the

other gender (or some alternative gender different from one's assigned gender)

The condition is associated with *clinically significant distress* or impairment in social, occupational, or other important areas of functioning."

(Plaintiff's Add. Exhibit 7, p. 1, emphasis in original)

Plaintiff's Paragraph 29: Dr. Austin stated that it was her expert opinion to a reasonable degree of certainty in her field that "the disclosure of Mr. Logan Grimes' transgender status by his supervisor, Melvin Judkins, to Mr. Grimes' co-workers is tantamount to the disclosure by Mr. Judkins of Mr. Grimes' confidential medical information." (Plaintiff's Add. Exhibit 7, p. 2)

Plaintiff's Paragraph 30: Dr. Austin explained:

"In sum, Mr. Grimes is a transgender man who was able to pass and be stealth at work as a result of his past (surgical interventions) and ongoing (weekly doses of testosterone) medical gender affirming interventions that address his medical condition (gender dysphoria). As such, it is clear that the disclosure of Mr. Grimes' transgender identity by his supervisor Mr. Judkins was tantamount to a disclosure of Mr. Grimes' private and confidential medical information, namely his issues with gender dysphoria, the corresponding gender dysphoria diagnosis, and the confidential medical interventions he has accessed and/or continues to access in order to alleviate his gender dysphoria and affirm his masculine gender identity. Given that Mr. Grimes is very obviously male presenting, when co-workers were told of Mr. Grimes' transgender identity, the fact that Mr. Grimes had transitioned through a range of gender affirming medical interventions would become known."

Plaintiff's Add. Exhibit 7, p. 3)

Plaintiff's Paragraph 31: Dr. Austin stated also that it was her expert opinion to a reasonable degree of certainty in her field that "the disclosure of an individual's transgender status to others who are unaware of this person's transgender identity/status has the potential to cause significant emotional distress and exacerbate the individual's gender dysphoria" (Plaintiff's Add. Exhibit 7, p. 3), and she supported that opinion with reference to a significant number of peer reviewed studies (Plaintiff's Add. Exhibit 7, pp. 3-6; 7-8)

Plaintiff's Paragraph 32: Judkins, himself, testified that he believed that the assertion that

Grimes is transgender meant that he had a sex change (Defendant Judkins Exhibit E, p. 80, lines 11-13), and that, if a person gets a sex change, that's a medical procedure (Defendant Judkins Exhibit E, p. 79, lines 19-21)

Plaintiff's Paragraph 33: Judkins testified that he believed that someone's transgender status would be private information which should not be disclosed to others without the permission of the person involved. (Defendant Judkins Exhibit E, p. 128, lines 1-8)

Plaintiff's Paragraph 34: Judkins testified that the Cook County jail is not a safe place for transgender people if they are not in the protective tier. (Defendant Judkins Exhibit E, p. 112, line 21-p. 113, line 3)

Plaintiff's Paragraph 35: When Grimes worked passing out medicines to the detainees, a lot of the time he was on the tier by himself, and when Grimes was on the tier in the max unit, there might be about 45 detainees there in the open area. (Defendant Judkins Exhibit D, p. 333, line 22-p. 335, line 8)

Plaintiff's Paragraph 36: Judkins testified that there are things about himself or his life that he chooses to keep private, and if his supervisor at work disclosed those things to his coworkers, that would not make him feel good and could make him sad. (Defendant Judkins Exhibit E, p. 117, line 5-p. 118, line 3)

Plaintiff's Paragraph 37: Grimes testified that, after the incident, he could not return to work because he felt unsafe. (Defendant Judkins Exhibit C, p. 235, line 14-p. 236, line 5)

Plaintiff's Paragraph 38: At his deposition, Grimes was asked what symptoms of emotional distress he had suffered, and he replied:

> "Sleepless nights. My blood pressure has gone up, you know, nervous about the future and providing for my family. Also house, not able to make my payments, so my house is going into foreclosure. Those are the kind of things that emotionally weigh on a person, safety, next step."

(Defendant Judkins Exhibit D, p. 308, lines 10-17)

<u>Plaintiff's Paragraph 39</u>: Grimes testified that it hurts him a lot when he is treated differently than other people because of an aspect of who he is that he has no control over. (Defendant Judkins Exhibit D, p. 355, lines 15-19)

<u>Plaintiff's Paragraph 40</u>: Judkins teased the men on the med team when they would go to the tier with transgender detainees, by saying "you know you like that, that's your kind of woman," those types of comments. (Defendant Judkins Exhibit C, p. 165, line 18-p. 166, line 19; p. 157, lines 12-22; p. 178, line 15-p. 179, line 13)

Respectfully submitted,

/s/ Joanie Rae Wimmer
Joanie Rae Wimmer

JOANIE RAE WIMMER
Attorney at Law
715 Lake Street, Suite 516
Oak Park, Illinois 60301
(630) 810-0005
jwimmerlaw@sbcglobal.net
Attorney No. 3125600